SUPREME LODGE KNIGHTS OF PYTHIAS v. IMPROVED ORDER KNIGHTS OF PYTHIAS.

1. Fraternal and Benevolent Associations—Corporate Name.
The act of Congress incorporating the Supreme Lodge Knights of Pythias did not confer upon such corporation an exclusive right to the use of the name "Knights of Pythias," since that name was already in use by an existing voluntary association.

2. Same—Schism—Reassociation Under Similar Name.
While members withdrawing from a fraternal society are not at liberty to associate themselves under a name so like the name of the parent order as to be calculated to deceive ordinary persons proceeding with ordinary care, they may, subject to this limitation, use any derivative of such name that they may see fit to employ.

3. Same—Injunction.
The name "Improved Order Knights of Pythias," adopted by withdrawing members of the Knights of Pythias, is not calculated to mislead, and therefore its use will not be enjoined.

Appeal from Wayne; Carpenter, J. Submitted April 8, 1897. Decided May 28, 1897.

Bill by the Supreme Lodge Knights of Pythias against the Improved Order Knights of Pythias and others to enjoin the use of the name adopted by the defendant order. From a decree dismissing the bill, complainant appeals. Affirmed.

*Philip T. Colgrove* and *John C. Burns* (*Philip T. Van Zile*, of counsel), for complainant.

*Conely & Taylor* (*Florea & Seidensticker*, of counsel), for defendants.

Montgomery, J. Complainant filed a bill for an injunction, praying that defendants be restrained from using the ritual and jewels of the order of the Knights of

Pythias, and from using the name "Improved Order Knights of Pythias." A careful examination of the authorities cited by counsel, and of the reasons urged by them, has failed to convince us that the learned trial judge erred in dismissing the bill. The opinion of Judge Carpenter contains so full a review of the case, and its reasoning is so satisfactory, that we adopt it as our own. That opinion is as follows:

"The Knights of Pythias is a secret, unincorporated society, organized in 1864, and has about 500,000 members. Complainant is the Supreme Lodge of the Knights of Pythias, and was incorporated by special act of Congress in 1894. The Improved Order Knights of Pythias is also a secret, unincorporated society, and had, June 30, 1895, when the last report was made, 1,738 members. It was formed in December, 1894, by former members of the Knights of Pythias. These last-mentioned members left the old order, and formed the new, because a convention of the Supreme Lodge Knights of Pythias, in August, 1894, declared that 'henceforth and forevermore the ritual used in this and all other English-speaking countries shall be printed in the English language only.' Both orders are fraternal and benevolent. They have many resemblances. The important difference between them, as already indicated, is this: The ritual of the Improved Order may be printed in German, while that of the Knights of Pythias cannot be. Complainant asks an injunction restraining defendants from using the name 'Improved Order Knights of Pythias,' and from using the name 'Knights of Pythias,' or any derivative thereof, and from printing or using any ritual in substance like that used by the Knights of Pythias.

"There is no proof that the defendants' ritual is so nearly like complainant's as to justify the interference of a court. The sole question is, then, whether defendants shall be enjoined from using the name 'Improved Order Knights of Pythias.' Complainant's counsel insist that by the act incorporating complainant as 'Supreme Lodge Knights of Pythias' an exclusive right to the name 'Knights of Pythias' was acquired. Numerous cases are cited holding that a corporation has an exclusive right to its name. No case, however, is cited holding that incorporation gives an exclusive right to a name already in use, as the name 'Knights of Pythias' was, by an existing voluntary society.

On the contrary, *McGlynn* v. *Post*, 21 Abb. N. C. 97, cited by complainant's counsel, and *Black Rabbit Association* v. *Munday*, 21 Abb. N. C. 99, hold that in such a case an exclusive right is not acquired. Indeed, if complainant, by incorporating, acquired the exclusive right to the name 'Knights of Pythias,' it could at will compel the order of which it is only the head, and all other lodges, subordinate and grand, to cease using the name 'Knights of Pythias.' It seems clear, therefore, that complainant did not, by becoming a corporation, acquire the exclusive right to the name 'Knights of Pythias,' and that, whatever are its rights, they cannot exceed those of the order of which it is the head.

" The question, then, arises, are the rights of the order violated? Nearly all the members who withdrew from the old order and went into the new are Germans, and many of them are unable to read and understand a ritual not printed in German. Prior to the action of the order which was the occasion of their withdrawal, the order furnished for their use, and they used, rituals printed in German. Defendants therefore withdrew from the society of which they were members, because it changed, not because it continued, its policy. The propriety of the conduct of complainant in forbidding the printing of the ritual in German, the propriety of the conduct of defendants in withdrawing from the order, are questions solely for the consideration of the parties themselves. The Knights of Pythias had a lawful right to declare that its ritual should be printed only in English, and defendants had an equally lawful right to found an order whose ritual might be printed in German. Having formed this order, is it possible that defendants cannot give it an appropriate name, a name which will properly describe it? This new order is formed by the members of the Knights of Pythias who withdrew from the Knights of Pythias because that order changed its policy in a matter which it must be presumed they thought important. This order resembles the Knights of Pythias. It stands to these members in the place which the Knights of Pythias has vacated. To a certain extent it carries out a policy which the Knights of Pythias formerly carried out and abandoned. Complainant charges that the defendants have seceded from it, and have established a rival and very similar organization. No name could appropriately be adopted, under these circumstances, which did not contain the words ' Knights of Pythias,' because no name

could properly describe it, either by reference to its origin, its history, or its purposes, which did not contain those words. Suppose that this new order had received some other name. It would have been none the less, in the minds of complainant, a seceding faction of the Knights of Pythias; it would have been none the less, to defendants, a substitute for the Knights of Pythias; and it would have been none the less, to the impartial historian, an offshoot of the Knights of Pythias.

"One excellent test of an appropriate name to select under such circumstances is furnished by the history of schisms in other societies. Nearly all our varieties of churches of the same denomination are the result of secession or withdrawals from the parent church of that name, and it has been the usual course for the new church society to adopt as a permanent part of its name the name of the parent organization. Take one instance: A part of the Methodist Episcopal Church withdrew and established the Protestant Methodist Church. So we have the Order of Foresters of America, formerly the Ancient Order of Foresters of America; the Canadian Order of Foresters; the Independent Order of Foresters,—all of which are, as I understand, offshoots of the Ancient Order of Foresters of England. No one has ever questioned the appropriateness of using the parent name as a part of the name of a new society formed under these circumstances, so far as I can learn. To my mind, it is clear, therefore, that defendants, in naming their order, not only could, but were almost bound to, in order to properly describe it, make some use of the words 'Knights of Pythias.' Of course, there is this limitation: Defendants should not use a name so much like the name of the order from which they have withdrawn as to work a damage to that order. The only way that the order can be damaged, as the least reflection will prove, is by depriving it of members who would otherwise join it.

"Let us apply to this case the principles by which courts determine similar controversies of trading concerns. The decisive principle is this: "No man has a right to sell or advertise his own business or goods as those of another.' *Williams* v. *Farrand*, 88 Mich. 478. 'One must not, therefore, adopt a name so similar to that of another as to draw to himself business intended for that other.' *Higgins Co.* v. *Higgins Soap Co.*, 144 N. Y. 462; *Tallcot* v. *Moore*, 6 Hun, 106; *Potter* v. *McPherson*, 21 Hun, 559; *Holmes* v. *Holmes*, 37 Conn. 296 (9 Am. Rep.

324). The correct principle is stated in complainant's brief (page 71) as a quotation from the opinion of Judge Foster, of the superior court of Vanderburgh county, Indiana, rendered in the suit of *St. George Lodge, K. of P.,* v. *Rosenthal et al.:* 'Where a corporation has appropriated and used a name for such length of time as to become identified by the name, and has established a character and reputation under it, it is a fraud upon the corporation and the public if this name be assumed by others under such circumstances as would lead the public to believe that they constitute the original corporation, and, where injury will result to the corporation on account thereof, courts of equity will, at the suit of the injured parties, by injunction restrain the further perpetration of the wrong. It is the special injury to the party aggrieved and the imposition upon the public that constitute the wrong which the courts will redress. It is not necessary that the wrong should be intentionally committed. It is enough that the name should be used under such circumstances as would lead the public to believe that the latter organization was the former, and thereby cause injury to the former corporation.'

."Where one uses the name of another for the fraudulent purpose of attracting to himself business which belongs to that other, no injustice will be done if the court assumes that the name chosen accomplishes this purpose, even though the resemblance be not great. If one intends that the name he has chosen shall be believed to be that of another, it is fair to infer that he will so use that name as to promote the desired belief. Accordingly we find that the motives with which a name is chosen, and the circumstances attending its use, as well as the similarity of names, have a bearing in determining whether business is liable to be diverted, and, consequently, whether the courts shall interfere. Compare *Myers* v. *Kalamazoo Buggy Co.,* 54 Mich. 215 (52 Am. Rep. 811), and *Williams* v. *Farrand,* 88 Mich. 479. See, also, *Higgins Co.* v. *Higgins Soap Co.,* 144 N. Y. 471. Where the name was not chosen for the purpose of deception, and has not been used under circumstances intended or calculated to deceive, the similarity of names must be such as to deceive ordinary persons proceeding with ordinary care, to justify the interference of a court. 2 High, Inj. § 1088; *Seixo* v. *Provezende,* 1 Ch. App. Cas. 192; *McLean* v. *Fleming,* 96 U. S. 251. There is not a particle of evidence in the case that defendants chose

,the name 'Improved Order Knights of Pythias' with the intention that their order should be supposed to be the order Knights of Pythias, nor that they have done anything since the order was founded to lead the public to believe that the orders were the same. On the contrary, the official communications issued by defendants, some of which are set up in complainant's bill, inform all who read them that their order is not the Knights of Pythias, but is a separate, and, they claim, an improved, order. Defendants seem quite as anxious as complainant to have it understood that their order is not the Knights of Pythias. This, then, is the test: Is the name 'Improved Order Knights of Pythias' so nearly like the name 'Knights of Pythias' that ordinary persons using ordinary care would think them identical, would think them two names for the same order, or for branches of the same order, so that they would become members of the defendants' society when they really wanted to join complainant's society?

"In considering this question, it should be borne in mind that no complaint is or can be made on account of any damage resulting from the fact that the defendant society is a rival and a competing organization, and that the founders of an order have the right to claim that their order is superior to any and every other order. It is fatal, therefore, to complainant's case, if the difference of names indicates that defendants' society is a different society (even though it is claimed to be better) from complainant's. The law does not protect the name from any consideration for the feelings of those who bear it. *Day* v. *Brownrigg*, 10 Ch. Div. 294. The sole question is, as already stated, the effect, or probable effect, of the similarity of names, in diverting business. In determining this question, courts do not receive much, if any, aid from adjudicated cases. In the communications of defendants set up in complainant's bill, the name of their society appears as follows: 'Improved Order K. of P.' The name of the complainant is set forth as follows: 'Supreme Lodge Knights of Pythias.' It is the head of the order 'Knights of Pythias.' To me it is self-evident that no careful person could think that these two orders were identical, and, as has been said, in cases of this class the question is whether the similarity is calculated to mislead the ordinary run of mankind. There certainly is just as much distinction between these names as there

is between that of the Episcopal Church and the Reformed Episcopal Church, or that of the Presbyterian Church and the United Presbyterian Church.

"But we are referred to the case of *Russia Cement Co.* v. *Le Page*, 147 Mass. 206 (9 Am. St. Rep. 685), holding that the introduction of the word 'improved' into the name of the article manufactured by defendant will not justify its use, if, in other respects, its use is unjustifiable. Another case very similar is that of *Hohner* v. *Gratz*, 52 Fed. 871. In the former case it was held an invasion of the rights of the owner of the name 'Le Page's Liquid Glue' to use the name 'Le Page's Improved Liquid Glue.' In the latter case it was held an invasion of the rights of Mr. Hohner, who made and sold harmonicas under his own name, to use the name on harmonicas, 'Improved Hohner.' The distinction between these cases and the case at bar is obvious. In those cases the word 'improved' indicated, not a different glue, but an improved quality of the same glue. One wishing to buy 'Le Page's Liquid Glue' would naturally wish to buy 'Le Page's Improved Liquid Glue.' In the *Hohner Case* the court said, 'The words "Improved Hohner" would signify his (Hohner's) make of a better quality,' and upon this ground an injunction was granted. Now, the name 'Improved Order Knights of Pythias' does not mean, and no one can think for a moment that it does mean, that it is the same order as the Knights of Pythias. Every one who knows enough about secret societies to be qualified to join them knows that a different name of a society means a different society. He would know that the Improved Order Knights of Pythias was not a variety of the order Knights of Pythias. The difference of names would indicate to him possibly a claim on the part of defendants that theirs was the better order, of which he must for himself determine; but certainly that it was a different order. If, in the *Le Page* or *Hohner* case, the names had only indicated that a different article was claimed to be superior to one of similar name, it is obvious that the court would not have interfered. 'Improved' has a different signification when prefixed to the name of an order from what it has when prefixed to the name of an article.

"The case of *St. George Lodge, K. of P.,* v. *Rosenthal,* decided by Judge Foster, of the superior court of Vanderburgh county, Indiana, is more nearly in point. This case was brought by a subordinate lodge Knights of

Pythias against some of the defendants in this suit, and the same relief was sought that is sought in this suit. That case arose upon demurrer to a complaint. Judge Foster, though sustaining the demurrer on the ground that the cause of action must be enforced by the order Knights of Pythias, in that complaint stated to be a corporation, indicated his opinion, as candidly stated by him, on each question presented. He stated it to be his opinion that the assumption of the name 'Improved Order Knights of Pythias,' under the circumstances alleged in the complaint, was wrongful. I have no criticism to make on this conclusion, nor, with the exception hereafter presented, on the reasoning upon which it is based. The facts alleged in that complaint and the facts established in this case differ radically. It was alleged in that case that defendants, in organizing and naming their society, were seeking to disrupt and defeat the Knights of Pythias. It did not appear, as, in my opinion, it does in this case, that the name 'Knights of Pythias' was in any way descriptive of the new organization. This circumstance is expressly alluded to in the reasoning by which Judge Foster reaches the conclusion that the assumption of the name is wrongful. I must conclude, therefore, that Judge Foster's opinion has no application to the facts established in this case. In speaking of the difference between the name of complainant and defendants' society, Judge Foster said, 'It is established by authorities too numerous to need citation that such a differentiation amounts to nothing.' This is the only statement in Judge Foster's opinion in which I cannot concur. I have already indicated my opinion concerning this difference, and the only cases which it is claimed hold that this differentiation amounts to nothing which I have been able to find, or which eminent counsel brought to my attention, are the cases which I have just tried to show are not in point.

"The best possible evidence that names are sufficiently similar to mislead the public is the fact that the public, or some portion thereof, has been misled. The defendant order was in existence more than a year before the testimony in this case was taken, and yet not a particle of evidence was introduced showing or tending to show that the similarity of names ever misled or deceived any one. This case must be decided, not by citation of authorities, but by answering the question: Would an ordinary person, using ordinary care, wishing to join the Knights

of Pythias, join the Improved Order Knights of Pythias? For the reasons above stated, I must answer this question, No. A decree will be accordingly entered dismissing complainant's bill."

The decree will be affirmed.

Grant, Hooker, and Moore, JJ., concurred. Long, C. J., did not sit.