EMORY *et al. v.* GRAND UNITED ORDER OF ODD FELLOWS, etc., *et al.*

1. Under the evidence the court did not err in holding that the name of the defendants' order was "substantially similar" to the name of the plaintiffs' order, and a "colorable imitation" thereof.

2. There being evidence authorizing the court to find that the plaintiffs' order first existed in this State and had been incorporated under the laws of this State prior to the date upon which the defendants' order sought to organize and become incorporated, and that (so far as the record disclosed) there was no other order of a similar name having an existence and incorporation prior to that of the plaintiffs, in this State, it was not error to grant the injunction, under the provisions of the act of 1909, embodied in the Civil Code, § 1994.

3. Whether the act of 1909 at the time of its passage was violative of the constitution of the State of Georgia (art. 3, sec. 7, par. 8), which declares that "No law or ordinance shall pass which refers to more than one subject-matter, or contains matter different from what is expressed in the title thereof," the defect was remedied by the subsequent adoption of the Code of the State, containing all the provisions of the act referred to.

4. The act in question is not violative of those parts of the constitution of the United States contained in the 14th amendment, which prohibit any State from making or enforcing any law which abridges the privileges or immunities of citizens of the United States, or which has the effect of denying to any person within the jurisdiction the equal protection of the laws.

JULY 21, 1913.

Injunction. Before Judge Mathews. Bibb superior court. January 11, 1913.

The Subcommittee of Management of the Grand United Order of Odd Fellows in America, a corporation under the laws of Pennsylvania, and The District Grand Lodge, No. 18, Grand United Order of Odd Fellows of America, Jurisdiction of Georgia, a corporation under the laws of Georgia, hereinafter referred to as the plaintiffs, brought their petition against W. O. Emory and others,

alleging as follows: The Grand United Order of Odd Fellows in America is a fraternal, social, benevolent, and charitable organization existing in the State of Georgia, the same having been organized as a benevolent and friendly society in the State of New York in the year 1843 or 1844, and having adopted, at the time of its organization, the name Grand United Order of Odd Fellows in America, and ever since having kept and promoted said organization in and under said name. The order established its first branch in the State of Georgia in the year 1870, and has ever since kept up and promoted its organization by maintaining branches thereof and by organizing numerous lodges; and it has now a numerous membership. This order, Grand United Order of Odd Fellows in America, was incorporated under the laws of the State of Pennsylvania in the year 1886, having as its object the purposes aforementioned. A District Grand Lodge of the order was organized in the State of Georgia in the year 1882, and this has been in continuous existence throughout the State, using the name of said Order of Odd Fellows with the consent of the constituted authorities of the order. The branches of said Order of Odd Fellows organized and existing within the State of Georgia, composing the District Grand Lodge of said Order in Georgia, itself a branch of the first-named petitioner, became incorporated as a body politic in the State of Georgia in the year 1902 under the corporate name and title of. "The District Grand Lodge, No. 18, Grand United Order of Odd Fellows of America, Jurisdiction of Georgia." Petitioners are the duly constituted authorities for the maintenance and management of said Grand United Order of Odd Fellows in America in the United States of America and in the State of Georgia and all the branches of said Order of Odd Fellows within the State of Georgia; the branches being called Lodges, and, where composed of women, called Households of Ruth. The Order of Odd Fellows is a secret organization, having seals, signs, passwords, emblems, and insignia. The words "Odd Fellows" are the distinctive words in the name of said Order, "which ever have and do cardinally distinguish the name and style of said Order and of your petitioners from other fraternal orders of a like kind in the United States of America and in the State of Georgia," and said Order and petitioners have acquired a proprietary right in said name and have exclusive right as against the defendants to the use

of the name aforesaid and the words "Odd Fellows" and the phrase "Order of Odd Fellows," which form a part of the name. The continued existence and success of petitioners' order is largely dependent upon its name and repute, in which name it has acquired property and established its reputation as a fraternal organization. The defendants were formerly members of petitioners' Order of Odd-Fellows, but are not now members, having ceased to be such during the year 1910, and they are now associating themselves together for the purpose of organizing a like organization with that of the plaintiffs under the name of "Ancient Order of Odd Fellows, Leeds Unity," and are proceeding to organize branches to be known as Subordinate Lodges of Odd Fellows and Households of Ruth. The name and style of the organization proposed by the defendants and their associates is substantially identical with the name and style of petitioners' order. The prayer is, that the defendants may be restrained and enjoined from organizing under the proposed name and instituting Subordinate Lodges, etc.; and that they be further restrained from representing themselves to be Odd Fellows or members of that order in the State of Georgia, and be also restrained from infringing on the name of petitioners and its emblems and insignia.

At the interlocutory hearing the judge granted the injunction as prayed for, to be of force until the verdict of a jury upon final trial. He found that the following facts were either admitted or proved: The plaintiffs are and have been for a number of years duly incorporated; and their order has built up in the United States and in Georgia, among the colored people, a large membership, and has established an extensive organization for social, benevolent, and friendly purposes, and also an insurance business. This order was identical or closely connected with an order of the same name in England, and was established by virtue of due authorization of the English society. The defendants are colored people, and are acting under authorization of an order of the Odd Fellows in England, independent of the Grand United Order of Odd Fellows, to wit, the Ancient Order of Odd Fellows, Leeds Unity; and unless prevented by some legal or equitable right of the plaintiffs, growing out of their prior occupation of the field, the defendants have as much right to proceed with their organization as the plaintiffs had when they proceeded to establish their lodges and extend their

membership in this State. The defendants, shortly before the filing of this suit, were all members of the plaintiffs' order; they became dissatisfied with the management of the order, on account of alleged wrong and of illegal and oppressive conduct of the order and its officers; and they joined in a movement (after receiving authority from a regular English order of Odd Fellows to organize and extend a branch of this English order in Georgia) to denounce the management of the plaintiffs' order, etc. The distinctive and popular name of the plaintiffs' order is the "Order of Odd Fellows." This is also a part of the name in and by which the defendants are seeking to establish their order; and the words in the formal designation of the defendants' order do not make such a difference as would prevent it from being so similar to that of the plaintiffs as to cause confusion of names and work injury to their order and business.

*R. D. Feagin, R. L. Berner,* and *R. K. Hines,* for plaintiffs in error. *C. P. Goree, John P. Ross,* and *Rosser & Brandon,* contra.

Beck, J. (After stating the facts.) We are of the opinion that the court below correctly held that the distinctive name of the plaintiffs' order is "Order of Odd Fellows," and that this is also the essential and distinctive part of the name in and by which the defendants are seeking to establish their order, and that the other words in the formal designation of the defendants' order do not make such a difference of designation as would prevent its being "a colorable imitation" of the name of the plaintiffs' order. Considering the character and purpose of the two organizations, the names are "substantially similar." From the report of the case of *Creswill* v. *Knights of Pythias,* 133 *Ga.* 837 (67 S. E. 188, 134 Am. St. R. 231, 18 Ann. Cas. 453), it appears that the Grand Lodge of Knights of Pythias of Georgia and others filed a petition to enjoin Creswill and others from prosecuting an application to be incorporated under the name "Grand Lodge Knights of Pythias of North America, South America, Europe, Asia, Africa, and Australia, jurisdiction of Georgia," one of the grounds of the application for injunction being that the name of the defendants was a colorable imitation of the name of the plaintiff in that case. In the opinion rendered by this court, reviewing the judgment of the court below granting the injunction prayed for, it was said: "Counsel for defendants contend that the name they are seeking to

appropriate by incorporation is not substantially the same or a colorable imitation of the plaintiffs' name. They say they make the name essentially different by adding the names of the continents, North America, South America, Europe, Asia, Africa and Australia. We could not agree with this contention of the defendants if the names of the continents thus used as suffixes were employed in every instance where the order is designated; for it is well established by the proof that the distinctive words in both orders are the words, 'Knights of Pythias.' At one time in the history of the plaintiffs' order, from the time of its incorporation under the act of 1870 to the time of its incorporation by the special act of Congress of 1894, the supreme order was known as the 'Supreme Order Knights of Pythias of the World.' The defendants, in specifying their field of operation, do not specify the entire earth, but the main continents thereof. These words denoting latitude of operation are not distinctive, and they are not always added in the use of the name. It is the use and colorable or imitative character of the name that controls, and the use made of the name by the association alleged to have infringed is a question of fact for the jury. *Foster, Milburn & Co.* v. *Blood Balm Co., 77 Ga.* 216 (3 S. E. 284); *Lies* v. *Daniel, 82 Ga.* 272 (8 S. E. 432); *Whitley Grocery Co.* v. *McCaw Mfg. Co.,* 105 *Ga.* 839 (32 S. E. 113). The addition of the word 'Artificial' by suffix to the name 'Carlsbad Sprudel' does not prevent infringement, 'Carlsbad' being the distinguishing word. The name 'National Folding Box and Paper Company' is infringed by the name 'National Folding Box Company Limited.' 'The imitation need only be slight, if it attaches to what is most salient.' Johnson *v.* Bauer, 27 C. C. A. 374, 82 Fed. 662; McCann *v.* Anthony, 21 Mo. App. 83; Saxlehner *v.* Eisner & Mendelson Company, 179 U. S. 19, 31 (21 Sup. Ct. 7, 45 L. ed. 60); Paul on Trade-Marks, §§ 59, 168, 170, 188. The plaintiffs in error rely upon the case of Supreme Lodge Knights of Pythias *v.* Improved Order Knights of Pythias, 113 Mich. 133 (71 N. W. 470, 38 L. R. A. 658), in which it was held that these names are not so similar as to cause one to be taken for the other. We do not believe that this case is in line with the trend of authorities on the subject of similarity of names." We think that what is said in the *Creswill* case from which the above quotation is taken, and in the cases cited, is decisive of the question in hand, and renders any

more elaborate discussion unnecessary here. The decision in the *Creswill* case relative to this question supports the ruling of the court below, holding that the name of the defendants' order is substantially similar to the name of the plaintiffs' order, and is a colorable imitation thereof.

2. Section 1993 of the Civil Code reads as follows: "No person or organization shall assume, use, or adopt, or become incorporated under, or continue to use the name and style or emblems of any benevolent, fraternal, social, humane, or charitable organization previously existing in this State, and which has been incorporated under the laws of this or any other State, or of the United States, or a name and style or emblem so nearly resembling the name and style of such incorporated organization as to be a colorable imitation thereof. In all cases where two or more of such societies, associations, or corporations claim the right to the same name, or to names substantially similar as above provided, the organization which was first organized and used the name, and first became incorporated under the laws of the United States or of any State of the Union, whether incorporated in this State or not, shall be entitled in this State to the prior and exclusive use of such name, and the rights of such societies, associations, or corporations, and of their individual members, shall be fixed and determined accordingly." The court was authorized to find from the evidence that the plaintiffs' order existed in this State and had been incorporated under the laws of this State prior to the date upon which the defendants' order sought to organize and become incorporated, and that so far as the record discloses there was no other order of a similar name having a prior existence and incorporation to that of the plaintiffs in this State; and it followed that, under the provisions of section 1994 of the Civil Code, the plaintiffs were entitled to injunctive relief.

3. The court below evidently based its decision upon the provisions of sections 1993 and 1994 of the Civil Code, and did not pass upon the question which, but for that act, it might have been necessary to decide, to wit, whether, under the general law as to the infringement of trade-names and trade-marks and the laws relating to unfair competition in trade, the plaintiffs were entitled to injunction; and it is unnecessary for us to consider that question, in view of the express provisions of the two sections of the

Code referred to. But it is recited in the bill of exceptions, that plaintiffs in error "except to so much of the opinion as holds that the act of 1909 therein referred to was a legal and valid law and applicable and controlling in the present case, and that the same was error, for the reason that said law, as contended in the argument of defendants [plaintiffs in error] before the chancellor was void for the following reasons: (a) That said act was violative of par. 8, sec. 7, art. 3 of the Constitution of Georgia, to wit: 'No law or ordinance shall pass which refers to more than one subject-matter, or contains matter different from what is expressed in the title thereof.'" Whatever force such an objection might have had in case it had been urged to the constitutionality of the act prior to the adoption of the Civil Code of 1910, the objection lost its force completely upon the adoption of the code, as the provisions of the act of 1909 are embodied in the two sections of the Civil Code above referred to and in section 258 of the Penal Code. *Central of Georgia Ry. Co.* v. *State,* 104 *Ga.* 831 (31 S. E. 531, 42 L. R. A. 518) ; *McFarland* v. *Donalson,* 115 *Ga.* 567 (41 S. E. 1000).

4. The act in question is not violative of those parts of the constitution of the United States contained in the 14th amendment, which prohibit any State from making or enforcing any law which abridges the privileges or immunities of citizens of the United States, or which has the effect of denying to any person within the jurisdiction the equal protection of the laws.

<em>Judgment affirmed. All the Justices concur.</em>