RIGHT WORSHIPFUL EASTERN DISTRICT GRAND LODGE, NUMBER ONE, OF THE INDEPENDENT ORDER OF GOOD SAMARITANS AND DAUGHTERS OF SAMARIA OF NORTH AMERICA AND THE WEST INDIES, Plaintiff, *v.* BARNABUS G. JOHNSON, as Grand Chief of the Empire State Grand Council, under the Right Worshipful National Grand Council of the Independent Order of Good Samaritans and Daughters of Samaria of North America; BARNABUS G. JOHNSON, SARAH LATTIMER, WALTER O. SMITH, AARON TAYLOR et al., Defendants.

(Supreme Court, New York Trial Term, May, 1919.)

Equity — protection of right to use name — corporations — associations.

Equity will protect the right to use the name "Independent Order of Good Samaritans" as the title of a corporation or voluntary unincorporated association.

ACTION to restrain defendants' use of plaintiff's corporate name.

Samuel A. Singerman, for plaintiff.

George C. Franciscus (Guernsey Price, of counsel), for defendants.

McAVOY, J. No longer can it be asserted successfully in equity that a right to the user of the name or style of a corporate body or voluntary unincorporated association will not be protected unless organized and carried on for the mercenary ends of trade or commerce. Some opinions of English jurists, and the *Colonial Dames* case here (173 N. Y. 586), once gave countenance to this view, but it is now unrecognized and almost formally repudiated. *Society of the War of 1812* v. *Society of the War of 1812, in State of New*

*York,* 46 App. Div. 468; *Benevolent Protective Order Elks* v. *Improved B. P. O. Elks,* 205 N. Y. 459; *Supreme Lodge Knights of Pythias* v. *Improved Order Knights of Pythias,* 113 Mich. 133; *Salvation Army in United States* v. *American Salvation Army,* 205 N. Y. 619. The basis of relief is essentially similar to that for which the restraining power is invoked in behalf of trading companies, to wit, the likelihood of deception of the public because of identity of cognomen, style of corporate title, unique description of purpose or insignia of membership or of trade mark. We can proceed, then, on the assumption that if the defendants' use of the title adopted by them is calculated to deceive the careful man or woman acting in a careful manner into an erroneous belief that the defendant order is the same fraternal body as the plaintiff or a branch or subordinate lodge thereof, such use of its title ought to be enjoined. One can hardly close his eyes to the obvious intent of the user of this title and its significant feature. The appeal to the postulant for membership is the concept of the gracious and neighborly conduct of the Samaritan recited in the Gospel according to St. Luke, chapter 10, beginning with the thirty-third verse, of which the court is judicially informed and personally cognizant. The distinctive appellation of '' Good Samaritans,'' adopted by a fraternal, benevolent and philanthropic order, may be protected on invocation of the prior corporate user, because the tendency of those solicited for membership is quite likely to be affected toward a responsive enrollment by reason of the nature of the objects of the society as connoted by its name. In these affairs of life it is almost true that '' the name's the thing,'' and the name by which both bodies are surely to be known in common speech is '' Good Samaritans.'' It requires a subtle reason-

ing and meticulous distinctions to reach any other conclusion than that deception is sure to ensue if both orders continue the use of substantially similar names, and it is not the rule that a word changed here and there in a title is enough of disparity to allow escape from inhibition of its user against a prior right accruing through earlier incorporation in and adoption of the contentious name. Where a corporation has appropriated and used a name for such length of time as to become identified by the name, and has established a character and reputation under it, it is a fraud upon the corporation and the public if this name be assumed by others under such circumstances as would lead the public to believe that they constitute the original corporation. It is the private special injury to the party aggrieved and the imposition upon the public that constitute the wrong which the court redresses. It is not at all elementally essential that the wrong be intentionally committed. It is enough that the user of the name be such as surely to persuade the prospective joiner that the defendant organization is the plaintiff, and thereby inure to the damage of the latter. If one chose a name likely to be believed to be that of another, it is fair to infer that he will so use that name as to promote the desired belief. There need not be proof that any one has yet been deceived; it is in the likelihood of deceit that the evil sought to be corrected rests. There is but one hesitant thought in rendering a decree of injunction. That arises from these circumstances received in evidence as historical data, acquired in the experience of a witness for defendant. This very estimable lady gave a history of this order, in so far as it obtained in our state, which was designed to justify the defendants in using the contentious title. Some time in the year 1848 a Grand

Council of the Order of Good Samaritans existed in New York, a copy of whose purported charter was produced at the trial. The members of this body were colored people. There was, too, a Grand Lodge of the Order of Good Samaritans existing at the same time, which was composed of persons both colored and white. In about 1865 the white men of the grand lodge gradually dropped out of the order, and there remained the two bodies, the grand council and the grand lodge, both now composed solely of colored members. The grand council became and has been practically extinct in New York for many years, has had no branches, lodges or other subordinate chapters, and the grand lodge has carried on the work of the order here and became incorporated as a New York corporation since the eventual dissolution of any life in the parallel body known as the grand council. The national council of the order, which had the headship of the grand councils, has been in continuous existence throughout the period during which the New York Grand Council has become defunct. It is from this national council that defendants have received a charter to carry on the work of the order, and it is asserted that the grant of this national council of such charter right confers on them the privilege of user of the name Good Samaritans *in invitum* of the local corporate body previously established, and exclusively for some period exercising the duties and work of the order. Many of the states have both branches of the order operating in harmony within their confines, but none have, so far as appears, had a pause in continuity of existence in either their state lodges or councils such as has eventuated in our own commonwealth. This lack of user of the name within the state by the grand council for so long a period seems to me to amount to an abandonment of the power to assert a

coincident right to concurrent use of this distinctive name and accordingly the remedy is patent. The good works likened to those of the Samaritan ought not to be restrained, nor their performance enjoined, but there are in the histories, both sacred and profane, many titles to assume, which will assist in inspiring the members of the defendant order to carry on their conception of the work that they would do. A decree ought to be handed in restraining the defendants from the use of the words Good Samaritans in the title of defendants' order or in anywise holding out to the public any device, insignia, ritual, badge, emblem, figure, sign, charter or other indicia of their voluntary association calculated to proffer to prospects that the defendants and their associates are the plaintiff order or have any right to the use of the name.

Ordered accordingly.