## GRAND LODGE IMPROVED, BENEVOLENT, PROTECTIVE ORDER OF ELKS OF THE WORLD, v. EUREKA LODGE NO. 5, INDEPENDENT ELKS et al.

### No. 4650.

Circuit Court of Appeals, Fourth Circuit.

Aug. 17, 1940.

Writ of Certiorari Denied Dec. 9, 1940.

See 61 S.Ct. 319, 85 L.Ed. ——.

William C. Hueston and Perry W. Howard, both of Washington, D. C. (W. W. Foreman, of Norfolk, Va., T. H. Reid, of Portsmouth, Va., Walter H. Land, of Norfolk, Va., and J. C. Robertson, of Richmond, Va., on the brief), for appellant.

James G. Martin and E. S. Peters, both of Norfolk, Va., for appellees.

Before PARKER, DOBIE, and NORTHCOTT, Circuit Judges.

PARKER, Circuit Judge.

Plaintiff is the grand lodge of the colored fraternal order which was before this court as plaintiff in the case of Grand

Lodge of Improved, Benevolent and Protective Order of Elks of the World v. Grand Lodge, Improved, Benevolent and Protective Order of Elks of the World, Inc., et al., 4 Cir., 50 F.2d 860. Prior to 1939, Eureka Lodge No. 5 was one of its local lodges at Norfolk, Va. As a result of a controversy, the connection between this local lodge and the plaintiff grand lodge was definitely severed in the Summer of 1939, plaintiff claiming that the charter of the local lodge was revoked and its members expelled from the order for failure to pay dues, and defendants claiming that it withdrew from the grand lodge because of mistreatment.

After the severance of the relationship between plaintiff and the local lodge, the latter, which had been incorporated under the laws of Virginia, amended its charter, changing its corporate name to "Eureka Lodge No. 5, Independent Elks", and under that name continued to function as an Elks lodge. This suit was thereupon instituted by plaintiff against the local lodge and two of its officers, and a temporary injunction was obtained restraining them from using the word "Elks" or the ritual, emblems, insignia, or other paraphernalia of plaintiff. On final hearing, decree was entered enjoining defendants from using as the name of their organization "Eureka Lodge No. 5, Independent Elks" or "any other name so similar to the name of the plaintiff, which standing alone, or in conjunction with other writings or symbols, has a tendency to mislead or deceive the public into believing that the defendant organization is a subordinate lodge of, or is connected with the plaintiff." The injunctive decree, however, contained the following proviso: "Provided, however, that the defendants may use 'Elks' or 'Eureka Lodge', or all of those words, as parts of the name of their order and in connection with their fraternal activities, provided that in so doing defendants and those associated with them use every reasonable effort to prevent confusion as to the two fraternal orders; that is to say, those words, if and when used by defendants and their associates, must be so described, modified or limited by other appropriate words and symbols as to avoid any reasonable conclusion by the public or prospective members that the defendant organization is connected or affiliated with plaintiff."

Plaintiff appealed from so much of this order as permitted the use of the words "Elks" or "Eureka Lodge" by defendants, but on the argument before us very properly abandoned any contention as to the use of "Eureka Lodge". As to the use of the word "Elks" and the ritual, emblems, insignia and other paraphernalia of the order, we think that plaintiff's position is well taken and must be sustained. The principles applicable were fully stated by this court in the former case, Grand Lodge Improved, Benevolent and Protective Order of Elks v. Grand Lodge Improved, Benevolent and Protective Order of Elks, Inc., supra, 50 F.2d 860, 864, where, with respect to a very similar controversy between the organization which is the plaintiff here and certain of its seceding members in the State of Virginia, we said: "In the case at bar, complainant for more than a quarter of a century had enjoyed the use of its name and had built up thereunder a large fraternal order among the colored people of the United States. Its fraternal, charitable, and educational activities had commended it to the public, and had given membership therein a value to the people from whom it recruited its membership. It was entitled to enjoy the fruits of the organization which it had built up, unhampered by the efforts of others to appropriate to themselves its corporate name with the advantages thereto attaching. If the Virginia members were dissatisfied, they, of course, had a right to withdraw and organize a new order; but they had no right, if they did so, to adopt the name of the original order or to hold themselves out as a branch of that order. To do so constitutes a fraud upon the original order and upon the public, and, if allowed, would result in enabling the rival organization to appropriate to itself the advantages which the original order had built up through years of effort. A more glaring example of unfair competition could not well be imagined."

The word "Elks" is the dominant word in the name of plaintiff order. So far as the public is concerned, "improved", "benevolent", "protective" and "of the world" are mere surplusage. See Emory v. Grand United Order of Odd Fellows, 140 Ga. 423, 78 S.E. 922; Knights of Maccabees v. Searle, 75 Neb. 285, 106 N.W. 448. The order is known as the colored "Elks"; and if defendants are allowed to use the

word "Elks" in the name of their organization, the injunction granted by the court below will amount to nothing. Defendants as "Elks" will continue to be identified in the mind of the public with the plaintiff organization; and this will be unfair to plaintiff, not only because it will enable defendants to infringe upon the rights of plaintiff with respect to the use of a name to which plaintiff's organization has given value, but also because it will subject plaintiff in the public mind to responsibility for the action of a group over which it has no further control.

■ It is argued that in as much as defendants have been members of the order, they have the right, after seceding from it, to use so much of its name as will identify them as having been originally connected with it. Reliance for this position is placed upon the decision of Supreme Lodge, Knights of Pythias v. Improved Order Knights of Pythias, 113 Mich. 133, 71 N.W. 470, 38 L.R.A. 658. As we pointed out in our former decision, however, the soundness of this Knights of Pythias decision is questionable. And see Creswill v. Knights of Pythias, 133 Ga. 837, 67 S.E. 188, 134 Am.St.Rep. 231, 18 Ann.Cas. 453, and Emory v. Grand United Order of Odd Fellows, supra. Where a name, not merely generic or descriptive, is adopted by an order, there is no reason why seceding members should be allowed to use it. Such use by seceding members, over whom the order has no further control, has obviously every element of unfairness that would arise from use by strangers. To say that the defendants are "Elks" and, therefore, have the right to use the word "Elks" in the name of their organization is to beg the question. They cease to be "Elks" when their connection with the organization is severed. When members of the order, they are "Elks", not in any generic or descriptive sense of that word, but in an imaginative sense. They are not elks, but men, and are called "Elks" only because of membership in the order which has adopted that name. Upon separation from the order, their use of the name applicable to members of the order amounts to a fraud upon the order and upon the public and should be enjoined. Grand Lodge Improved, Benevolent and Protective Order of Elks v. Grand Lodge Improved, Benevolent and Protective Order of Elks, Inc., supra; International Committee of Young Women's Christian Association v. Young Women's Christian Association of Chicago, 194 Ill. 194, 62 N.E. 551, 56 L.R.A. 888; Emory v. Grand United Order of Odd Fellows, supra.

■ It is further argued that Eureka Lodge should be permitted to use the word "Elks" in its corporate name because it existed as an "Elks" lodge prior to plaintiff's incorporation. The date of incorporation, however, is immateral. Plaintiff order was organized a number of years before it was incorporated, and unquestionably granted a charter to Eureka Lodge in the year 1899 under which that lodge operated until the relationship was severed in 1939. Any separate existence which Eureka Lodge may have had prior to 1899 was merged with that of plaintiff on acceptance of the charter. The fact that the local lodge was incorporated in 1907 and again in 1913 under the laws of Virginia is unimportant. Such incorporation was as a subordinate lodge of plaintiff, not as an independent organization.

■ Appellees have made a motion to dismiss the appeal on the ground that appellant did not serve a statement of the points upon which it would rely upon appeal while designating less than the complete record for inclusion in the transcript. As appellees designated for inclusion all parts of the record not designated by appellant, however, and as the entire record was certified by the Clerk of the District Court and is before us, any irregularity in the designation of the record by appellant has been cured.

For the reasons stated, the decree appealed from should be modified so as to forbid defendants' using the word "Elks" in their corporate name, or upon their stationery or literature, and to forbid their using the ritual, emblems, insignia or other paraphernalia of plaintiff order.

Modified.