## MISHAWAKA RUBBER & WOOLEN MFG. CO. v. S. S. KRESGE CO.

### No. 8612.

Circuit Court of Appeals, Sixth Circuit.

April 18, 1941.

Thomas S. Donnelly, of Detroit, Mich. (Thomas S. Donnelly, of Detroit, Mich., and Eugene M. Giles, of Chicago, Ill., on the brief), for appellant.

William B. Giles, of Detroit, Mich., for appellee.

Before HICKS, HAMILTON, and MARTIN, Circuit Judges.

HAMILTON, Circuit Judge.

Appellant, Mishawaka Rubber and Woolen Manufacturing Company, filed a complaint against the appellee, the S. S. Kresge Company, for trade-mark infringement and unfair competition. The court found for appellant, but it claims the relief granted was inadequate and on this appeal it asks that the judgment be extended to award it further and other relief.

For many years appellant has been engaged in the manufacture, sale and distribution of footwear of various kinds and for more than thirty-five years, has been manufacturing rubber heels for use on its boots and shoes. Continuously since 1898, appellant has used a trade-mark which it registered in 1901 for its goods, consisting of an arbitrarily selected representation of a circular figure or colored ball of varying shades of red applied directly to the tread face at approximately the center of the rubber heel. It has renewed the registration of its trade-mark from time to time and is presently using it.

Since 1917 it has exemplified its trade-mark by embedding a circular plug of contrasting colored rubber in the heels of shoes sold by it of the same thickness of the heel so that the distinctive marking remained on the product during its life. In combination with the colored circular ball figure, appellant also used other registered trade-marks consisting generally of the words "Ball Band" or sometimes "Mishko" in raised lettering and also at bottom the lettering "Mishawaka, Indiana." The circular mark and the words "Ball Band" were associated together in different ways, the ball-shaped mark sometimes appearing between the words "Ball" and "Band" and sometimes being at the side of or above or below them. The words "Trade-Mark, Rubbers, Mishawaka, Ind." were always stamped under the colored circular mark. Mishawaka is the town in Indiana where appellant did its manufacturing.

Appellant has spent, and is continuing to spend, large sums of money advertising in catalogs, pamphlets, newspapers and by window displays, its product under its trade-marks, prominently displaying its colored circular figure as an identification of origin. Appellant's shoe heels have been sold throughout the United States always as a part of its shoes, never separately.

Appellee, the S. S. Kresge Company, operates and maintains a large number of retail stores throughout the United States where it sells detached rubber heels and lifts manufactured for it by the Essex Rubber Company, O'Sullivan Rubber Company and the Boston Woven Hose and Rubber Company. Those manufactured for it by the Essex Rubber Company had a red circular mark on the tread with the word "Crusader" in raised lettering and embossed in the outer face of the circular mark was a crusader's head or a head in armor.

On discovery that appellee was selling the above-described heels, appellant, on May 9, 1933, notified appellee that it was infringing its trade-mark and appellee, on May 19, 1933, informed appellant it intended using some color other than red on its heels and notified the Essex Company to discontinue the use of the red circular mark on the heels manufactured for it and from about June 6, 1933, to June 29, 1934, Essex manufactured and supplied appellee heels with a circular orange colored mark but from May, 1933, until June, 1934, appellee continued to sell heels with red circular mark, as well as those with orange circular mark indiscriminately mixed together on the same counters. Appellant again notified appellee of the alleged infringement on February 15 and also on

June 14, 1934, and on June 29, 1934, appellee notified the Essex Rubber Company to discontinue delivery of heels to it. From June 1, to September 1, 1934, the Essex Rubber Company was changing its molds and thereafter supplied appellee with heels with an indented diamond-shaped insert with a crusader's head embossed thereon, the insert contrasting to the color in the body of the heel and having on it the word "Crusader."

The heels manufactured for appellee by the O'Sullivan Rubber Company, had on the tread surface an embossed circular Indian head in red with the words "Sure-Foot" in raised lettering thereon and these were delivered to appellee from July 1, 1934, to December 1, 1934, and sold by it from bins and counters on which were also displayed and sold heels having the red "Crusader" mark. After December 1, 1934, appellee requested the O'Sullivan Rubber Company to change the color of the circular Indian head mark from red to green and thereafter appellee sold these heels bearing the green circular Indian headmark from the same bins and counters where there was displayed and offered for sale heels bearing the red circular mark of the "Crusader" type, the orange circular mark of the "Crusader" type and the indented diamond-shaped "Crusader" head type.

The heels made for appellee by the Boston Woven Hose & Rubber Company had an American eagle on a circular background on the tread surface, with the word "Evergrip" embossed thereon but they did not use a red or reddish color.

The court below found that the heels manufactured for the appellee by the Essex Rubber Company and the O'Sullivan Rubber Company infringed appellant's trade-mark but that those manufactured by the Boston Woven Hose & Rubber Company did not so infringe. It also found that the method followed by appellee in the sale of its heels and lifts was unfair to appellant.

The court decreed that appellee be enjoined from selling, aiding or abetting others either directly or indirectly in selling rubber heels with a red or reddish circular ball figure appearing on the surface portion of the heel or any imitation thereof, so nearly resembling the ornamental dress of the heels of appellant as to be calculated to deceive the ordinary purchaser as to the source of such goods and it also decreed that appellee account to appellant for profits realized by it after May 19, 1933, on rubber heels bearing a red or reddish circular mark indented upon the face portion thereof, to purchasers who were induced to buy because they believed the heels to be those of appellant and which sales appellant otherwise would have made.

Broadly stated, appellant attacks the decree in two particulars: (1) that the court should have enjoined the appellee from selling any heels with a disc of different color from the remainder of the heel; (2) that appellee should have been required to account for the profit on the sale of all heels with a distinctive colored disc regardless of any direct evidence of positive deception or whether or not appellant would otherwise have made the sales.

The registration of appellant's trade-marks did not enlarge its substantive rights. All it did was to confer jurisdiction on the court regardless of diversity of citizenship and give registrant certain procedural advantages. Armour & Co. v. Louisville Provision Company, 6 Cir., 283 F. 42; Armstrong Company v. Nu-Enamel Corp., 305 U.S. 315, 322, 59 S.Ct. 191, 83 L.Ed. 195.

Whatever substantive rights appellant may have in the premises arise under local law and are within the scope of Erie Railroad Company v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487; Kellogg Company v. National Biscuit Company, 305 U.S. 111, 59 S.Ct. 109, 83 L.Ed. 73. However, the parties make no claim that the local law is different from the general law on the subject and each has relied in the briefs almost entirely on Federal precedents.

A manufacturer may market his products in a dress in which there is no element of size, shape, color, lettering, word or symbol to which he has the exclusive right of use, but if the ensemble has come to be a public guaranty of origin and quality, he may secure protection against unlawful pirating by a competitor on the ground of unfair competition. Schwannecke v. Genesee Coal Company, 262 Mich. 624, 247 N.W. 761. In such a case, it is the duty of the court to examine the dress of the product in the original and that of the alleged pirate as a whole, both as to resemblances and differences to ascer-

tain whether, in view of the differences, the resemblances are so marked that the ordinary purchaser would be likely to be deceived. The manufacturer may also put forth his product marked with an arbitrary symbol, lettering or figure and rely upon building up a good will by associating in the public mind his product with the invented word or arbitrary symbol, and by thus using the marking acquire an exclusive right in it. Smith v. Walker, 57 Mich. 456, 22 N.W. 267, 24 N.W. 830, 26 N.W. 783. The symbol or marking of the manufacturer does not exist in gross or separate and apart from the good will with which it is associated but only attaches itself to the goods which it identifies and which goods are manufactured or sold by its owner.

An abstract right in a symbol has no existence, but the symbol must be considered in association with the article which it identifies. In this sense a trade-mark differs from a patent or copyright. The latter exist the instant either is issued or entered. The patentee or author, without use, remains the real or true owner of the grant until it is dedicated to the public use by abandonment or by operation of law, but the registry of a trade-mark does not ipso facto make the mark. Patent right and copyright rest upon the view that the results of the original labor of the inventor and the author ought as a matter alike of justice and of public policy to be secured against piracy, while as regards the proprietor of a trade-mark, the question of originality does not arise so long as the mark is sufficiently distinctive really to identify his goods and for the purpose of registration to satisfy the Trade-Mark Act, 15 U.S. C.A. § 81 et seq. In truth the registration of a trade-mark is rather the recognition of a fact than the grant of a privilege. The law of trade-marks is analogous to that of patents or copyrights in that each is based on one's rights to have guaranteed to him the profit derivable from his own property.

A "technical trade-mark" may be defined as a word, device or symbol lawfully appropriated by a manufacturer or trader to distinguish his specific products, the primary purpose of which is to indicate the origin of his goods and not to distinguish a particular grade, style or size of the manufacturer's products. It must be capable of distinguishing one's articles from all others as regards origin or ownership. As to whether a commercial signature of one's goods is a technical trade-mark is material here. Guilty knowledge or fraudulent intent is not an essential element of infringement of such a mark. It is well settled that an infringement will be restrained irrespective of the question of intent on the part of the infringer. Saxlehner v. Siegel-Cooper Company, 179 U.S. 42, 43, 21 S.Ct. 16, 45 L.Ed. 77. This is based upon the ground that the original proprietor has a qualified property right in the trade-mark, of which the pirate has made unlawful use.

The right to an injunction is not made to depend upon the fact that deception was either intended or practiced. If the opportunity is furnished where deception may ensue, a basis exists to grant injunctive relief. Lawrence Mfg. Company v. Tennessee Mfg. Company, 138 U.S. 537, 555, 11 S.Ct. 396, 34 L.Ed. 997. This rule, however, does not prevail in all cases in awarding either damages or cost. Proof of the absence of fraudulent intention in trespassing on trade-mark rights may avail a defendant in saving costs, damages or profits where his acts have been perfectly bona fide. The rule prevails in Michigan that an account of profits will not be taken where the wrongful use of a trade-mark or trade-name has been merely accidental or without any actual or wrongful intent to defraud the original owner or to deceive the public. Liberty Oil Corporation v. Crowley, Milner & Co., 270 Mich. 187, 258 N.W. 241. This is in harmony with the rule prevailing in the federal courts. Straus v. Notaseme Company, 240 U.S. 179, 181, 36 S.Ct. 288, 60 L.Ed. 590.

In many cases, it is difficult to determine whether complainant's trade-mark has been actually pirated in such manner as to be likely to deceive and impose upon his customers or patrons of his manufacture or business, but it is the duty of the court in all cases to compare the whole labels or symbols used by the respective parties, and if the court finds that the infringers' devices are colorable, which requires a careful inspection to distinguish his marks and appearances from those of the manufacture imitated, the court will protect the original owner, but is not bound to interfere where ordinary attention by the purchaser will enable him to discriminate. The burden rests on complainant to show by a fair preponderance of the evidence that the ordinary mass of purchasers giving that attention which such persons usually

324

give in buying the article in question would probably be deceived.

■ Where a person uses the business symbol or label of another with the fraudulent purpose of obtaining business which belongs to the other, there will be no injustice if the court assumes the label or symbol so chosen accomplishes the purpose although the resemblance is slight. If one intends that the name, symbol or label so chosen should be mistaken for that of another, it is fair to assume he will use them to promote that belief or purpose. Therefore the motives with which the name, symbol or label is chosen, its similarity, as well as the surrounding circumstances, all enter into the determination of whether business will be lost or diverted. Where, however, the name, symbol or label is not chosen to deceive and has not been used in a way intended or calculated to deceive, the court should not interfere unless the similarity is sufficient to deceive the usual persons proceeding with ordinary care. Supreme Lodge K. of P. v. Improved Order K. of P., 113 Mich. 133, 71 N.W. 470, 38 L.R.A. 658. There is no finding of fact in the case at bar, and we find no evidence in the record to support the inference that appellee adopted the symbol used on its heels for the fraudulent purpose of attracting to itself business or sales which belonged to appellant and there is no evidence that any such sales occurred. The action is therefore limited to the charge that the defendant has infringed a technical trade-mark in violation of a qualified property right wherein the fraudulent intent is presumed. No justification is found in the record for an inference that any one appears to have been deceived by appellee's trade-mark into purchasing its shoe heels and lifts in the belief that he was purchasing shoe heels produced by appellant.

■ Appellant's trade-marks had been so long in use and so widely advertised, it is presumed that appellee had knowledge of them and even if the appellee assumed its trade-marks without any intention to mislead the public or to unfairly interfere with appellant's trade, if they so closely imitated appellant's as to lead to confusion and tended, because of their similarity, to be taken by the public for those of appellant, appellee must be held to the same responsibility as though it had been guilty of intentional pirating. Dayton v. Im-

perial Sales & Parts Co., 195 Mich. 397, 161 N.W. 958.

■ It is the tendency of the courts to restrict the scope of law applicable to technical trade-marks and extend its scope in cases of unfair competition. Columbia Mill Company v. Alcorn, 150 U.S. 460, 14 S.Ct. 151, 37 L.Ed. 1144; Koehler v. Sanders, 122 N.Y. 65, 25 N.E. 235, 9 L.R.A. 576. Appellant rests its cause of action both on the law of technical trade-marks and unfair competition. This being true, it becomes essential to ascertain the distinctions as well as the resemblance between the two legal principles. The underlying concept of each is the same; namely, the prevention of that which in its operation and results is a fraud upon the public and an injury to the rival trader. Delaware & H. Canal Co. v. Clark, 80 U.S. 311, 322, 13 Wall. 311, 20 L.Ed. 581. But, while the idea of fraud lies at the foundation of the law of technical trade-marks as well as that of unfair competition, it must be remembered that fraud may rest in actual intent shown by evidence or inferred from the circumstances or conclusively presumed from the act. Fraudulent intent must be shown by the evidence or be inferable from the circumstances in cases of unfair competition but where one uses the trade-mark or trade symbol of a competitor, fraud will be presumed from the wrongful use. No one has the right to use the technical trade-mark of another in connection with like goods but if he does and persists after being notified to desist, fraud and imposition, which constitute the essence of the injury, will be presumed and relief granted. Lawrence Mfg. Company v. Tennessee Mfg. Company, 138 U.S. 537, 549, 11 S.Ct. 396, 34 L.Ed. 997; McLean v. Fleming, 96 U.S. 245, 252, 24 L.Ed. 828; H. E. Winterton Gum Co. v. Autosales Gum & Chocolate Co., 6 Cir., 211 F. 612.

Appellant having acquired the exclusive right to the use upon its shoes of the trade-mark heretofore described, the remaining question is: Would the coloring and markings of appellee's lifts and heels, excluded from the injunction, likely mislead the ordinary or usual buyer into believing that he was purchasing goods manufactured by appellant.

All of the heels manufactured by appellant had a red circular figure or red ball on the tread face in approximately the center thereof with the words "Ball Band" in

raised lettering in different configurations and at the bottom thereof the lettering "Mishawaka, Indiana." All of appellee's heels, with the exception of two types, used the circular ball at first in red then in orange, green and beige but embossed on some of them were a Crusader's head, on some an Indian head, and on others an eagle. Appellant's heels had no arbitrary figure on them, but a circular contrasting, reddish section with accompanying lettering.

Color, except in connection with some definite arbitrary design which serves to distinguish the article as made or sold by a particular person, is not the subject of a trade-mark, but the owner of a valid trade-mark, otherwise distinctive, may be protected against appropriation by a rival through mere change in color. Samson Cordage Works v. Puritan Cordage Mills, 6 Cir., 211 F. 603, L.R.A.1915F, 1107. In considering the likelihood of confusion of goods where a trade-mark is a figure or design or lettering, the owner's right may well cover that figure or design or lettering reproduced in any color for the identity of the figure, design or lettering, may mislead the purchaser in spite of the difference in color. But, the difference in color may so emphasize the difference between the figure, design or lettering as to obviate the likelihood of deceiving any purchaser. If the trade-mark were a black cross, certainly one in bright red would distinguish them.

The words or phrases appearing on the respective marks here involved are so essentially dissimilar as to lend no color to deceit. Hence, obviously there can be no possibility of any confusion in sound between "Ball Band" and the words "Crusader," "Surefoot," and "Evergrip," so it is clear that the lettering on the heels is not relevant to the issue here, and consideration must be confined to a comparison of the physical appearance of the two designs.

A circle or ball as a trademark is publici juris where it has not acquired a secondary meaning as in the case here and therefore appellant can claim no exclusive right to their use standing alone. Patton Paint Company v. Sunset Paint Company, 53 App.D.C. 348, 290 F. 323. The degree of resemblance necessary to constitute infringement is incapable of exact definition. All that courts of justice can do in that regard is to say that no manufacturer or seller can adopt a trademark so resembling that of another trader that ordinary purchasers buying with ordinary caution are likely to be misled and each case must be determined on facts peculiar to it.

In the case of a symbol merely, an imitation must be fairly exact to infringe. In cases where the trade-marks are the imprints of animals of the same genus, one large, fat and well conditioned, the other small, lank and lean, there is no actionable deceit. Popham v. Cole, 66 N.Y. 69, 74, 23 Am.Rep. 22.

In our opinion the symbols and lettering descriptive of the articles and bearing the names of appellant and appellee respectively as manufacturers or producers, are entirely unlike in arrangement, general form and appearance insomuch that no one could mistake the lifts and heels of appellee, excluded from the lower court's injunction, for those of appellant.

Where two persons are engaged in selling like goods, each of them may aptly designate and describe them or attractively present them for sale but neither may acquire the exclusive privilege of doing so, and neither has the right to insidiously mislead purchasers into the belief that his wares are those of his competitor. The products here involved have some family resemblance but do not show close kinship.

The right to the exclusive use of a technical trade-mark is limited to a use of it upon some particular class of goods. Accordingly, it is not an infringement to use the identical trade-mark of another person upon an entirely different class of goods, but the owner of a trademark for a broad class, such as here, is entitled to enjoin the use of his work on a particular species of goods belonging to the class covered by the mark. But, before he is entitled to an accounting of profits for the use of his mark, the burden rests on him to show by a fair preponderance of evidence that either actual or reasonably probable deception or confusion has resulted and regard must be given to the class of persons who purchase the articles and to the circumstances ordinarily attending their sale. From the circumstances of this case, there appears no reasonable probability that there was confusion or deception without evidence of the fact. Therefore, the burden was upon appellant to prove that appellee had made profits attributable in whole or in part to the use of

# 326

appellant's trade-mark, even though they used identical or similar colors.

We agree with the District Court that the burden is upon appellant to prove that the appellee has made profits attributable in whole or in part to its trade-mark. Westinghouse Electric & Manufacturing Co. v. Wagner Manufacturing Company, 225 U.S. 604, 622, 32 S.Ct. 691, 56 L.Ed. 1222, 41 L.R.A.,N.S., 653.

The injunction which was granted was expressly limited to prohibiting the use of any red or reddish circular ball figure appearing on the face portion of the heel, or any imitation thereof so nearly resembling the ornamental dress of appellant's heels as to be calculated to deceive the ordinary purchaser as to the source of the goods, and accounting was limited to profits unlawfully enjoyed by appellee from sales made by it after May 19, 1933, of rubber heels bearing a red or reddish circular mark indented upon the face portion thereof, to purchasers who were induced to buy because they believed the heels to be those of appellant and which sales appellant would otherwise have made.

The trade-marks of appellant were in part old and in part new, but for the purpose of presenting its goods to the public as identifying origin, it had the right to adopt the combination it used and it is entitled to protection against palpable imitations and to the profits, if any, appellee has received by reason of the presumed palming-off of its goods as those of appellant. The case of appellant is not very strong on the facts, yet it seems to be entitled to the carefully limited injunction and accounting of profits which was granted.

The court in its judgment postponed the matter of awarding costs until the final disposition of the decreed accounting. Appellant asked us to amend the judgment by awarding it costs. The Federal Rules of Civil Procedure, rule 54, 28 U.S.C.A. following section 723c provides that costs shall be allowed as of course to the prevailing party unless the court otherwise directs.

By the plain language of the rule, the imposition of costs is a matter within the discretion of the trial court. Since the judgment is not final in this respect, we pass it. Appellant, deeming itself prejudiced by the error, if any, may get redress through application to the lower court for a modification of its judgment and afterwards if it deems itself aggrieved, he may appeal to this court for a review of the court's final judgment.

Judgment affirmed.