Trustees of the PENINSULA ANNUAL CONFERENCE of the METHODIST CHURCH, INC., a Religious Corporation of the State of Delaware, Plaintiff,

*vs.*

RAYMOND SPENCER, JAMES B. PARSONS, HARVEY WELLS, GEORGE POSTLES, RALTON WEBB, Trustees of the GRACE METHODIST CHURCH, Milton, Delaware, a Religious Corporation of the State of Delaware, Successors to Trustees of the MILTON METHODIST PROTESTANT CHURCH, Milton, Delaware, a Religious Corporation of the State of Delaware, now operating under the name of GRACE CHURCH,

Defendants,

GRAHAM DILL, JAMES T. CAREY, ERNEST JEFFERSON, WILLIAM H. WELCH and W. HOWARD CAREY, Intervenors.

*Sussex, July 18, 1962.*

*Robert W. Tunnell* and *John E. Messick,* of Tunnell & Raysor, Georgetown, for plaintiff.

*Russell J. Willard, Jr.,* of Hastings, Taylor & Willard, Wilmington, for defendants.

*Herman C. Brown* and *Grover C. Brown,* of Brown & Brown, Dover, for intervenors.

Seitz, Chancellor: This is the decision on a motion to intervene in this action by certain members of the congregation of the Grace Methodist Church of Milton, Delaware.

The facts and circumstances under which this motion arises are as follows: There exists in the United States a national church known as The Methodist Church. The Church is organized on the presbyteral system of church government with each local church or congregation irrevocably connected to the others and each local church being an integral part of the parent body. The internal structure of the Church is hierarchically arranged. The local congregations are governed by Quarterly Conferences within each particular church. These in turn are subject to the administrative oversight of an Annual Conference. Finally, at the summit of the pyramid rests the General Conference, the supreme legislative body of the Church. The basic structure of the Church is prescribed in its Constitution, but the particulars of organization, ritual, and procedure are found in the Discipline of The Methodist Church. According to the Discipline, each person who desires to become a member of the Church must declare his loyalty to The Methodist Church. Thereafter, he belongs not only to his local congregation, but to the whole body of Methodist worshippers as well. He is required to submit to all the rules, regulations, and governmental authority of The Methodist Church.

In 1956 a controversy arose between the congregation of the Grace Methodist Church and the Peninsula Annual Conference of The Methodist Church when the former refused to merge with another local congregation or to attend services at a time of day designated by the Bishop of the Conference. As a consequence thereof the Conference in May 1957 voted to discontinue the Grace Methodist Church as an appointment of the Annual Conference and directed the Trustees of the Conference to take over supervision of the property of the Milton congregation. Such action was purportedly taken in accordance with the Discipline of the Church which, it is contended, binds every local church to the commands of the supreme governing body and of certain subordinate bodies within the hierarchy of the Church. The elected trustees of the Grace Church refused to vacate the premises or submit to the supervision of the Annual Conference. Accordingly, the congregation of the Grace Church has continued to

hold religious services on part of the property, notwithstanding the Resolution of May 1957.

The Peninsula Annual Conference ("Conference") instituted this suit against the elected trustees of the Grace Church ("Trustees" or "defendants") praying that the court adjudge plaintiff as a corporate body "the actual and real owner" of the property in question. It contends that it is "entitled to receive, hold and enjoy the same as if title to the same had been originally vested in the plaintiff". In the alternative, the Conference contends that Trustees (in their corporate character) are merely trustees for plaintiff and by virtue of the 1957 Resolution are under a duty to convey the property to the Conference. In either case plaintiff prays that the Trustees be compelled to convey the property to the Conference and that the latter be restrained by an injunction "from interfering in any way with the enjoyment, possession, supervision, control and custody of the property."

Suit was commenced by service of process upon the Trustees as the incorporated board of trustees of a religious society. The summons and complaint were drawn in the following form:

TRUSTEES OF THE PENINSULA ANNUAL CONFERENCE OF THE METHODIST CHURCH, INC., a religious corporation of the State of Delaware,

Plaintiff,

v.

RAYMOND SPENCER, JAMES B. PARSONS, HARVEY WELLS, GEORGE POSTLES, RALTON WEBB, TRUSTEES OF GRACE METHODIST CHURCH, MILTON, DELAWARE, a religious corporation of the State of Delaware, successors to TRUSTEES OF THE MILTON METHODIST PROTESTANT CHURCH, MILTON DELAWARE, a religious corporation of the State of Delaware, now operating under the name of GRACE CHURCH,

Defendants.

Service was effected upon the trustees either personally or by leaving the documents with some other person, presumably a member of the individual Trustee's household. In the body of the complaint it was alleged:

"* * * 2. That the defendants comprise the present Board of Trustees of Grace Methodist Church, Milton, Delaware, and are successors to the Trustees of The Milton Methodist Church, Milton, Delaware, a religious corporation of the State of Delaware, and are now operating under the name of Grace Church. The Milton Methodist Protestant Church was incorporated under the Religious Societies Act, its Certificate of Incorporation being recorded in the office of the Recorder of Deeds, Georgetown, Sussex County, Delaware, in Deed Book 290 at page 46."

Defendants, represented by counsel, admitted the allegation. Plaintiff further alleged in Paragraph 9:

"* * * that on September 26, 1922, after the posting of a notice for ten (10) days on the door of the usual place of worship, in accordance with the *Religious Societies Act*, § 2166 *Code of 1915* now 27 *Del. C.* 105, the congregation with twenty-two (22) members present, voted to incorporate the local church under the name, The Milton Methodist Protestant Church. The Certificate of Incorporation was received on September 27, 1932, in the office of the Recorder of Deeds and is recorded in Deed Book 290 at page 46."

Defendants admitted:

"* * * that a Certificate of Incorporation is recorded in the records as alleged, and that said Certificate of Incorporation purports to support the remainder of the allegations in Paragraph 9 of the complaint; defendants are without sufficient knowledge or information to enable them to form a belief as to the truth of the remainder of the allegations in Paragraph 9 of the complaint."

Defendants having appeared and answered, plaintiffs sought and obtained answers to certain interrogatories. At a pre-trial conference on November 29, 1961, the parties agreed upon a schedule for the filing of briefs and concurred upon February 13, 1962, as the date for trial. After the Conference had filed its initial brief, the Trustees through their counsel gave oral notice that they withdrew all defenses to the complaint. The court thereupon, on February 14, 1962, entered a final judgment in plaintiff's favor.

The judgment declared the Conference to be the "real and actual owner" of the property in question. The Register was directed to have the court's order recorded in the office of the Recorder of Deeds. Finally, it was ordered "that the defendants or their successors in office or assigns be \* \* \* permanently enjoined from interfering in any way with the enjoyment, possession, supervision, control or custody of the real estate hereinbefore described by the plaintiff, provided, however, that the provisions of this paragraph [relating to the injunction] shall not be effective until July 2, 1962".

On June 8, 1962, a motion to intervene was filed on behalf of certain members of the congregation of the Grace Methodist Church purporting to act as representatives of "that class of persons who attend religious services or worship at that place of religious worship heretofore known as the Grace Church in Milton. These would-be intervenors ("Members") seek to bring themselves within the confines of *Chancery Rule* 23(a)(1), *Del.C.Ann.,* by alleging that "the character of the right sought to be enforced against the group of persons who attend religious worship at the aforesaid church is joint or common to all of them in that if the right sought to be enforced by the Plaintiff in this action is to be granted, then each and all of the members of the class of persons now attending religious worship at the aforesaid church shall be denied the right to further attend religious services or worship at the said church."

Leave to intervene is sought either as a matter of right under *Chancery Rules* 24(a)(2) and 24(a)(3) or, in the alternative, as a matter within the court's sound discretion under *Rule* 24(b)(2). Assuming the success of the motion to intervene, the Members further move that the court relieve them from the operation of the judgment previously entered in this cause, declare that judgment to be void, and dismiss the complaint with prejudice to the Conference. This is the decision upon the aforesaid motion. Parenthetically, the injunction provision of the judgment was staved pending the determination of the present motion.

One basis for the Members' motion to intervene is an alleged failure properly to incorporate in 1932 the religious society now

known as the Grace Church.[1]  The Members state that this defect prevented the Trustees from being "proper trustees" for purposes of the suit against the corporation.  I understand the Members to be claiming thereby (1) that the corporation having no legal existence, there was no proper defendant in the original suit and (2) that the Trustees by purporting to act for the corporation could not adequately represent any other interest in the property.

The Members say that suit here was brought against an incorporated board of trustees.  If in fact there was no corporation, then there never was a proper defendant before the court.  Hence, the decree previously entered in this case would be void.

Did the attempt to incorporate the Milton Methodist Protestant Church in 1932 sufficiently comply with the statute then in force so that a legally recognizable corporation arose?  The statute required that the election of trustees and the taking of a corporate name be certified "under the hands and seals of said Trustees, to the Recorder of Deeds."  10 *Rev.Code of 1915*, § 2164.  This requirement was clearly not satisfied, inasmuch as the signature of the Secretary alone appears on the certificate.  The Members say therefore that the corporation was a nullity.

The general rule with regard to the existence of a de facto corporation requires (1) a special act or general law under which a corporation may lawfully exist, (2) a *bona fide* attempt to organize under the law and colorable compliance with the statutory requirements, and (3) actual user or exercise of corporate powers in pursuance of such law or attempted organization.  *Read v. Tidewater Coal Exchange, Inc.,* 13 *Del.Ch.* 195, 116 *A.* 898.  I am satisfied that each of these requisites has been complied with here.  The Members tactitly concede that they are relying solely upon the defect in formality.  The mere failure of the trustees to sign the certificate of incorporation does not seem to be such a defect that corporate status should be denied to the Trustees of the Grace Church.  The certificate has been duly filed with the proper authorities for a period of thirty

---

1. Normally the court would not dispose of such matters on an application to intervene.  Since a final judgment was entered it seems desirable to resolve the application on the basis of the legal issues raised.

years without challenge. Presumably the Trustees have been acting pursuant to that status. The Members' motion to intervene was based in part on the claim that lack of corporate status was discovered by them only after the earlier decree in this case was entered. Aside from the fact that the Certificate of Incorporation is a public record, I think it relevant that for a period of thirty years the Members themselves did not contest the act of incorporation. Once the de facto status of the corporation is established, it may only be attacked by the State in a proceeding in the nature of *quo warranto*. *City of Wilmington v. Addicks*, 8 *Del.Ch.* 310, 43 *A.* 297. Therefore, the suit was properly maintained by the Conference against the Trustees as an incorporated board of trustees.

The Members' second argument in support of their motion to intervene is much more fundamental in character. They argue that the Trustees as the original defendants in the suit purported to act only in behalf of the corporation. Therefore, it is said, they could not adequately represent any interest other than the corporate interest in the property in question. They say that the Conference can prevail in this suit only if a decree against the incorporated trustees also legally binds any interest that the Members themselves might assert with regard to the property. In other words, if the Members have an interest in the real estate which is separate and distinct from the interest of the corporation, then that interest cannot be the subject of a binding decree unless the Members themselves are represented.

A discussion of certain principles of Delaware law will perhaps aid in understanding the nature of this controversy. At common law an unincorporated religious society was not capable of holding the legal title to property in its own name. However, a trust for the benefit of such a society was enforceable at the instance of the Attorney General. In the eighteenth century the General Assembly began the process of evolving a new set of rules applicable to these societies. The very first statute in 1744 empowered local religious groups to take legal title in their own name, contrary to the common law. 1 *Del. Laws, Ch.* 108a. Apparently this alteration was unsatisfactory, for in 1787, the Act of 1744 was repealed. 2 *Del. Laws, Ch.* 144b. In its place the Legislature provided a means by which congregations could elect trustees and then have the trustees incorporated as a body

politic to hold the legal title of the church's property for the benefit of the worshippers. Thus, after 1787, there were two ways in which legal title to church property could be held. First, by ordinary, unincorporated trustees; secondly, by a corporation composed of trustees elected pursuant to the Act of 1787. In the first case legal title resided in the trustees qua trustees. In the second case, however, legal title resided in the trustees qua corporation. The distinction of course was never more than a formal one. By the act of incorporation the trustees were able to sue and be sued and do other acts in the name of the corporation rather than in their own names. In either case, however, the congregation's beneficial interest in the property of the church remained the same.

The distinction between an incorporated and an unincorporated board of trustees became, after 1855, a matter of critical importance. By the Act of 1855 all conveyances thereafter made to trustees would not vest any interest in the trustees unless the trustees had in fact been incorporated and the deed were executed in the corporate name. In effect the Act of 1855 prevented any further conveyances to religious societies or congregations unless the trustees were in fact incorporated. However, the Act clearly provided that the title to any property held by unincorporated trustees which had been conveyed to them before 1855 would vest in an incorporated board of trustees as soon as the act of incorporation took place. One open question remained however in the statutory pattern. What effect, if any, can be given to a deed executed after 1855 to an unincorporated board of trustees? This is the problem here.

The heart of the Members' case can fairly be said to rest upon a single contention. They argue in effect that the members of a religious society can have a legally protected interest in the property of their church apart from the interest that is held in trust for them by the Trustees. Their argument proceeds along the following lines: The statute law of Delaware has, since 1787, provided a simple and uncluttered procedure by which a religious society can elect trustees and then have those trustees incorporated as a body politic to hold the temporalities of the church for the use of the congregation. Since 1855 these same statutes have also provided that no conveyance for

the use of such congregation shall vest any title in the persons to whom it is made unless the conveyance be made "both in form and in fact, to a corporation organized according to the provisions of the laws of this State." 11 *Del. Laws, Chap.* 275, § 2. All the real property here involved was conveyed after 1855 by six separate instruments to named trustees of the Milton Church. At the times the deeds were executed no attempt had been made to incorporate the religious society or the board of trustees to which the property had been conveyed.[2] Therefore, by the very terms of the statute, title did not vest in the grantees or in their successors, who are the Trustees in this suit.

What is the legal consequence of the failure of title to vest in the grantees? The Members make the rather striking contention that the Conference cannot prevail in this suit unless it can prove that title vested in the Trustees. In other words, since the Conference claims the property by virtue of the Discipline, it must first show that the Trustees had some interest upon which the Discipline could act. The Members' theory is that title never having vested in the Trustees, it must either have remained in the various grantors or else vested in the members of the congregation themselves by way of adverse possession. It is contended that under either alternative the Conference would have no claim upon the property. The Members argue further that while they are not bound by a decree which only purports to bind the Trustees, nevertheless a cloud will be thrown upon their "right of enjoyment" which Equity in good conscience should dispel.

Do the Members have any property interest that will give them standing to intervene in this lawsuit? The suit here is brought by a superior Church body against the trustees of the local congregation to obtain control of the property involved. Two grounds might be suggested for permitting members of the congregation themselves to intervene in such a suit. First, that they are beneficiaries of the trust and are being inadequately represented by the trustees with regard to their interest under the trust. Secondly, that they have an interest

---

2. The plaintiff's brief suggests a possible earlier incorporation of the Church. However, there is no support in the record for this suggestion and I therefore do not consider it.

in the property of the church, wholly apart from any trust, which belongs either to themselves personally or to the society. The Members seek to intervene only on the second of these two grounds. They do not argue that the Trustees have defended the trust improperly. Instead, they claim for themselves or for the society rights in the property which the Trustees could not have represented because they are in no way derived from the trust. The court is called upon to determine whether, apart from the trust, any such rights in fact exist. For this purpose the court's attention is directed first to the effect of the deeds of trust covering the real estate in question and then to the adverse possession issue.

First, can the Members claim any separate interest in the property by virtue of the deeds hereinbefore mentioned? I do not think so. If the deeds were void as to the Trustees, they would be void as to the Members as well. Therefore, the rights which the Members are seeking to establish do not exist by virtue of the deeds.

Next, can the Members claim a separate interest in the property by virtue of some possession in themselves? At the time the conveyances were made, no corporation existed as required by the Act of 1855. Therefore the deeds were not effective to convey good title. Presumably some members of the congregation entered upon the land at the time of each conveyance. The question, then, is what legal significance can be attached to this actual physical possession as between the members and their elected officers. The rule is that where a religious society is enjoying the use of real property, possession rests, in legal contemplation, with its officers. See *Delaware Land & Development Co. v. First and Central Presbyterian Church of Wilmington, Delaware, Inc.*, 16 Del.Ch. 410, 439, 147 *A.* 165, 178, citing *Gallupville Reform Church v. Schoolcraft,* 65 *N.Y.* 134. Thus, the members cannot claim any independent interest arising from this same physical possession.

From the preceding discussion it will appear that under the circumstances of the present case the Members, whether by deed or by possession, have only those rights which they possess as beneficiaries of a trust. Also, any interest which the Trustees had in the property before incorporation became vested upon incorporation in

the corporation itself. Therefore I conclude that the present suit directed against the corporation alone will effectively bind any interest that either the Trustees or the Members might have in the property.

One question nonetheless remains to be considered. If the Trustees hold something less than full legal title to the property, would the Discipline of the Church operate upon such interest so as to entitle the Conference to control of the property? The Members argue that unless the Conference can prove "ownership", the court cannot declare the Conference to be the "owner" of the property, nor can it enjoin Members' use of it.

I note that the Members do not argue here that their rights are not subject to the Discipline. They do not contend that the Conference acted improperly in adopting the Resolution of May 1957 by which the Conference, pursuant to the Discipline, assumed control of the property.

The rule with regard to denominational churches was unequivocally expressed in *Trustees of Pencader Presbyterian Church in Pencader Hundred v. Gibson*, 26 *Del.Ch.* 375, 22 *A.2d* 782 affirming *Kleffman v. Eastlake Presbyterian Church*, 24 *Del. Ch.* 270, 10 *A.2d* 332. Property acquired by a local church is held "in the sense of a trust for the maintenance and furtherance of the faith and creed of the denominational church at large of which the local congregation [is] but a component". 26 *Del.Ch.* at 387, 22 *A.2d* at 788. By joining themselves to the national Methodist Church, the members of a local congregation tacitly agree that they will be bound by the governing authority of the national body. Thereafter when some action is taken by that governing authority, the civil courts, in the absence of some irregularity in the procedure under which the acts were done, will not interfere. The applicable principle, which will bear repetition here, was succinctly expressed by Chief Justice Layton in the Pencader Church case:

> "* * * No one in this country is compelled to ally himself, or to remain identified, with any religious organization; but when he does join a church and becomes a member of that ecclesiastical body, he voluntarily surrenders his individual freedom to that extent; and so long as he desires to enjoy the privileges and

. benefits supposed to flow from the association, he must conform to the laws by which the religious organization is governed. Apart from the possible case of a clear and uncontestable abandonment of faith and a perversion of the implied trust, he has no right in the nature of a right of property in church assets which the civil courts can or should protect. Any other view would make impossible the theory of associated ecclesiastical government." *Id.* at 393, 22 *A.2d* at 790.

█ Under the rule stated, it is clear that were the legal title here indefeasibly vested in the Trustees, the use of the property would be subject to the control of the Methodist Church. The question still remains whether the existence of only a possessory interest in the Trustees would compel a different result. I think not. The decision in the Pencader Church case precludes a carving out of particular property interests in the local church free of the control of superior Church bodies. I conclude therefore that whatever interest the Trustees or the Members claim for themselves in the property by virtue of a trust is held by them for the benefit of The Methodist Church at large, subject to the Discipline of the Church. The prayers for relief in the initial complaint are consistent with my so holding.

In all fairness to Members' counsel, reference should be made to an argument pressed with some vigor in their brief. It is there urged that the Act of 1855 absolutely barred any passage of legal or equitable title to the corporation now existing. From this premise the conclusion is drawn that the Conference can have no rights in the property. Even accepting the initial premise, I do not think that the conclusion necessarily follows. Under the Pencader Church rule, any lesser interest in church property would still be subject to the commands of Church judicatories. The Conference therefore is entitled to the relief it seeks even if the deeds are deemed to have been wholly void.

The nature of the application now before me does not require any inquiry at the present time into the scope of the earlier decree. The relief granted to the Conference will be deemed to be in conformity with the opinion herein expressed.

It follows that the Members' motion to intervene must be denied. I should add that these cases are always distressing to a court and an attempt is made in resolving them to avoid expressing any opinion on the merits of the internal church dispute which resulted in this most unfortunate lawsuit.

Present order on notice.