OHIO SOUTHEAST CONFERENCE OF THE EVANGELICAL UNITED
BRETHERN CHURCH ET AL. *v.* KRUGER ET AL.
KRUGER ET AL. *v.* OHIO SOUTHEAST CONFERENCE OF THE
EVANGELICAL UNITED BRETHERN CHURCH ET AL.

[Cite as Ohio Southeast Conference of E. U. B. Church
v. Kruger, 17 Ohio Misc. 8.]

(Nos. 35689 and 35765—Decided October 14, 1968.)

Common Pleas Court of Fairfield County.

*Mr. Charles D. Redmond* and *Mr. Robert E. Johnston*, for plaintiffs.

*Mr. Charles M. Rosenberry, Jr.*, and *Mr. J. Michael Acton*, for defendants.

CRAMER, J. The above-entitled cases were consolidated for trial and, therefore, in this single opinion, we will dispose of the issues presented in each of the cases.

However, it is our view that a resolution of the issues raised in case No. 35765 is dependent upon and controlled by our decision in case No. 35689.

In case No. 37689, plaintiffs seek to:

Temporarily and permanently enjoin defendants from disposing of or interfering, conveying or encumbering church property described in the amended petition, both real and personal.

Temporarily and permanently enjoin the defendants, Roger L. Bishop and Roger Hale, from preaching or holding meetings in the Mills Memorial Evangelical United Brethren Church or interfering in any way with the duly assigned minister of the Ohio Southeast Conference of The Evangelical United Brethren Church to the Mills Memorial Church.

Require defendants to turn over to plaintiffs control of all church property real and personal and render a judicial account of their handling of such property and records.

Permit the holding of only such meetings in the church as authorized by the Discipline of the Church.

Require Roger L. Bishop to vacate the church property.

Plaintiffs seek such other and further relief as is just and proper in the premises.

In case No. 35765, plaintiffs therein pray that the defendants be required to set up the nature and extent of their claims in the real estate described in the petition, or be forever barred; that the same may be adjudged null and void; that the title of plaintiffs to said premises be quieted, and for such other and further relief as is just and proper in the premises.

Counsel for the parties in these causes have furnished the court with very able and comprehensive briefs and the court has, we believe, carefully considered the arguments made and the authorities cited therein. The testimony has been transcribed and the court is in possession of the transcript, together with the exhibits, all of which likewise have been carefully reviewed and considered.

The facts, including a brief recital of the historical background of the church, are substantially and in brief, as follow:

The Evangelical United Brethren Church was created as a result of the consolidation of the Evangelical Church and the United Brethren Church in Christ. This merger occurred in 1946. Thus, it becomes necessary to examine the background of the United Brethren Church in Christ, the parent church of the local Mills Memorial Church, the full name of the local church being Mills Memorial Evangelical United Brethren Church of Lancaster, Ohio, hereinafter referred to as Mills E. U. B., Mills Memorial Church or Mills Church. The United Brethren Church originated in the states of Maryland and Pennsylvania. At the General Conference of 1885, the conference authorized a commission to propose amendments to the Constitution of the general church. This was done and approval of the general church was received; thus, at the General Conference of 1889 the bishops of the church revised the Constitution.

This act caused some dissident members of the General Conference to remove themselves from the hall and reconvene elsewhere. The dissidents retained the name, United Brethren Church in Christ. However, in order to distinguish the dissidents from the main body of the church, the words "Old Constitution" were added when referring to this group. Therefore, since 1889 there had been two distinct groups, each known as the United Brethern Church in Christ. This remained the situation until 1946, at which time the United Brethren Church in Christ merged with the Evangelical Church to form the Evangelical United Brethren Church in Christ (hereinafter referred to as EUB Church). At this time the dissidents dropped the designation "Old Constitution" and simply referred to themselves as the United Brethren Church in Christ. This is the denomination with which the majority of the membership of the Mills EUB Church affiliated at the special congregational meeting held March 17, 1968.

The Mills EUB Church "liberal" group was incorporated on March 8, 1900. The following is included in the Articles of Incorporation:

"Not for profit, but to provide a place of worship for its members to be conducted according to the rules and discipline of the United Brethren Church, to promote the interests of the Christian religion; to receive and hold donations, etc. * * *"

In accordance with the merger of 1946 the Mills Memorial Church changed its name to Mills Memorial Evangelical United Brethren Church in Christ of Lancaster, Ohio (January 6, 1960).

In August 1967, preliminary work was undertaken in order to consolidate the EUB and the Methodist Church into one denomination. Thereafter, on January 28, 1968, a majority of the Mills Memorial Church membership voted not to merge with the Methodist Church. On March 6, 1968, defendants Roger Bishop and Roger Hale, minister and assistant minister of Mills Church, respectively, were suspended by the Southeast Conference of the EUB Church. A week later the trustees of the Mills EUB

Church amended the Articles of Incorporation by changing the name of the church to the Mills Memorial United Brethren Church in Christ of Lancaster, Ohio. Shortly thereafter, under the direction of Roger Bishop, a majority of the membership cast their lot with the United Brethren Church in Christ, heretofore referred to as the "Old Constitution" group.

At the conference held in Dallas, Texas, on April 23, 1968, the EUB Church and the Methodist Church merged to form the United Methodist Church.

The Mills Memorial Church was under the supervision of the Ohio Southeast Conference. The defendant, Roger Bishop, was first assigned as the pastor by the Southeast Conference to the Mills Church in 1961. He was reassigned by the Conference in 1967. The Mills Church sent a lay delegate to the Annual Southeast Conference of the Ohio Southeast Conference of the EUB Church.

Roger Bishop was suspended by the action of the Cabinet of the Conference for gross disobedience to the Order and Discipline of the EUB Church.

The Mills EUB Church submitted to and was governed by the Discipline of the EUB Church as the ecclesiastical law of the General Church and the governing law of the local church.

The Mills EUB owned certain parcels of real estate specifically described in deeds here in evidence. The property used as a place of residence of the preachers of the Mills EUB Church was conveyed to the trustees of Mills EUB Church by deed containing the following language:

"That said premises shall be kept and maintained as a place of residence for the use and occupancy of the preachers of the Mills Memorial Congregation of the Church of the United Brethren at Lancaster, Ohio * * * who may from time to time be appointed to said place, subject to the usage and discipline of said church as from time to time established, made and declared by the lawful authority of said Church of the United Brethren in Christ, etc."

All the real estate owned by the Mills Church, either in the name of the Board of Trustees or in the name of the

corporation, was acquired after the date of the incorporation of the church which occurred on March 27, 1900.

The plan of union of the EUB Church and the Methodist Church is set out in an exhibit here in evidence and consists of the steps delineated therein.

Plaintiffs' theory of their case, as set forth on page 22 of their trial brief, is:

"1. The Evangelical United Brethren Church is a connectional church and Mills Memorial Evangelical United Brethren Church is a subordinate unit.

"2. The Ohio Southeast Conference of the Evangelical United Brethren Church had supervisory jurisdiction over the Mills Memorial Evangelical United Brethren Church.

"The law of the Evangelical United Brethren Church is the Discipline and Mills Memorial Church had until March 8, 1968, submitted itself to the requirements of the Discipline.

"4 The law of the church should be applied by the court to the facts of this case.

"5. The real property of the Mills Memorial Church is held in trust by the local church, for the place of worship for its members, to be conducted according to the rules and discipline of the Evangelical United Brethren Church.

"6. The merger of the Evangelical United Brethren Church and the Methodist Church to form the United Methodist Church was accomplished by the Evangelical United Brethren Church by an amendment of the Constitution in the Discipline of the Evangelical United Brethren Church and that all requirements to legally amend were met."

The defendants' contentions, in respect to the issues in case No. 35689, can be summarized as follows:

(1) Plaintiffs are not the real parties in interest;

(2) Plaintiffs have no legal or equitable interest in the real or personal property of the defendants;

(3) An injunction may not be granted and an implied trust not imposed upon the real and personal property of the defendants;

(4) The constitutions of the United States and the

state of Ohio, together with the statutes and decisions rendered by courts in cases applying to this action, are to be followed and applied, and not the Discipline of the United Methodist Church nor its tenets of faith and rulings.

In respect to the defendants' claim that the plaintiffs are not the real parties in interest, it is our opinion that both the allegations in plaintiffs' amended petition and the evidence require a holding that the plaintiffs are the real parties in interest. Defendants' contention in respect thereto will be overruled.

A civil court limits its inquiry into matters involving religious disputes. The general law is set forth in 76 Corpus Juris Secundum 876, Section 86, wherein the following is stated:

"Civil courts adjudicate ecclesiastical matters only when civil or property rights are involved, and then only when their determination is necessary and incident to the adjudication of civil or property rights, and will go no further in considering ecclesiastical matters than is necessary for a determination of the case before it. Where property rights are involved, ecclesiastical questions are to be determined in accordance with the laws, customs, and usages of the church involved and decisions by authorized church tribunals will be accepted by the court as conclusive on such questions, unless, it has been held, they clearly violate church law or are in conflict with the law of the state. The courts will inquire only as to what are the rules and decisions of the church and its tribunals, and what parties or factions adhere to them, without questioning their wisdom or propriety, but may consider whether the action is church action, that is, whether the church body or officer acted within the scope of his authority."

This case involves, of course, a church dispute wherein property rights are involved.

Generally speaking, there are two types of churches: Congregational and connectional. When the property is held by a religious congregation which by the nature of its organization is strictly independent of other ecclesiastical associations and so far as the church government is con-

cerned owes no fealty or obligation to any higher author-
ity, it is a congregational church.

Where the religious congregation or ecclesiastical body
holding the property is but a subordinate member of some
general church organization, in which there are ecclesiasti-
cal tribunals with a general and ultimate power of control
more or less complete in some supreme judicatory over
the whole membership of that general organization, it is a
connectional church. See *Watson* v. *Jones,* 80 U. S. 679.
Also 47 Ohio Jurisprudence 2d, Religious Societies, Sec-
tion 3, pages 275 and 276.

Is the EUB a connectional church and Mills Memorial
EUB a subordinate unit thereof, as claimed by plaintiffs
or is it a congregational church? In 47 Ohio Jurisprudence
2d, Section 3, pages 275 and 276 we find the following:

"Under some systems each church or religious society
is an independent body with a congregational form of gov-
ernment not subject to the control of any higher ecclesias-
tical body, while under other systems the local church is
but a member of a larger religious organization and under
its government and control. * * *"

"With regard to the determination of the type of pol-
ity of a religious organization, the records of the conven-
tions and conferences of a religious denomination are evi-
dence to show its type of ecclesiastical polity, and is also a
church manual or a handbook for conferences issued by
the denomination. * * *"

The answer, therefore, to this question must, of course,
come from and be furnished by the evidence. In respect
thereto we find:

For many years the membership of the Mills Church
consented and submitted to the control of a superior gen-
eral church organization; the itinerant system is employed
by and is the accepted method of the EUB Church to which
areas their superior assigned two ministers; such assign-
ments are not of definite tenure and were made by the
Cabinet of the Annual Conference, composed of the Bishop
and District Superintendents, to the Mills Church; lay
delegates were sent by the Mills Memorial to the EUB An-

nual Conference; Mills Memorial secured approval from the Annual Conference of the Ohio Southeast Conference of its remodelling and building program; from 1900—the date of its incorporation—until the first part of 1968, Mills Memorial was loyal and dedicated to the Church. The Ohio Southeast Conference of the EUB Church had supervisory jurisdiction over Mills Memorial EUB Church. The Mills Memorial Church was under supervision of the Conference Superintendent who presided over the local conference and the pastor of the Mills Church who was assigned by the Cabinet of the Conference also under the supervision of the District Superintendent. The Mills Memorial EUB Church submitted to and was under the control of the EUB and the Discipline was followed in organizing and carrying out the program of the local church. The evidence revealed other indicia of the subordinate character of Mills Memorial to the General Church organization.

We find that the EUB Church is a connectional church and Mills Memorial EUB Church is a subordinate member of this larger religious organization and under its government and control.

Having determined that the EUB Church is a connectional church, our next inquiry must be as to the effect of such holding upon the question as to which of these two factions is entitled to ownership or control of the real and personal property of Mills Memorial EUB Church.

Since the organization of the EUB Church is connectional in form, not congregational, the Mills EUB is only a part of the larger body and, therefore, may not convert its property to uses not authorized by the superior church government. See *Watson* v. *Jones,* 80 U. S. 679.

Uniformly the decisions hold that while the legal title to church property may be in the trustees, the use of the property is controlled by the usages, customs, and discipline of the church in general. The Supreme Court of the United States in the *Watson case, supra,* said:

. . ''In cases of this character we are bound to look at the fact that the local congregation is itself but a member of a much larger and more important religious organization,

and is under its government and control, and is bound by its order and judgment.''

See also *Methodist Episcopal Church of Cincinnati* v. *Wood,* 5 Ohio 283; *Harrison* v. *Hoyle,* 24 Ohio St. 254. .

In 45 American Jurisprudence 777, Section 68, we find the following:

''Section 68. Connected Bodies. In case of a controversy raised by a schism or division as to rights in property acquired for the general use of a religious congregation which is itself part of a general organization of some religious denomination with which it is more or less intimately connected by religious views and ecclesiastical government, the question of identity is again the criterion in determining which faction is entitled to the property, and is again to be decided by ascertaining which of the two factions adheres to the governing body of the society. The governing body of such a society is generally some external organization to which the local church is subordinate; hence, the application of the criterion of identity in this class of cases calls for adherence to or sanction by such external organization, irrespective of the action of the majority of the local body; for while there can be no doubt of the right of individuals to withdraw from a religious society of which they have been members and to form a new society with such ends and government as they please, they are not endowed with the right of taking with them property consecrated to other uses.'' See also *Krecker* v. *Shirey,* 163 Pa. 534; *Katz* v. *Goldman,* 33 Ohio App. 150.

The EUB Church is governed by its ''Discipline,'' which constitutes the law of the church and therein is set forth the method of operation of the church. The Mills EUB Church in its Articles of Incorporation subjected itself to the Discipline of the United Brethren Church and when the articles were amended the Mills Church subjected itself to the Discipline of the EUB Church. Thus, becoming a connectional unit of the EUB Church.

It has been uniformly held that religious organizations have the right to prescribe such rules and regulations as to the conduct of their own affairs as they may think prop-

er, so long as the same are not inconsistent with the Constitution and the law of the land. (76 Corpus Juris Secundum, Section 32, page 782.) (45 American Jurisprudence 779.)

The second and third paragraphs of the syllabus of the case of *Beauchamp et al.* v. *Trustees of Miami Conference of EUB Church,* 110 Ohio App. 109, are as follows:

"2. Where, subsequent to the merger of the United Brethren in Christ Church and the Evangelical Church formed the Evangelical United Brethren Church, a United Brethren Church changes its name to 'Evangelical United Brethren Church' and accepts a minister and funds from the Conference of the Evangelical Church, and the superintendent of such conference recognizes such local church as a member of the conference, such local church by its conduct became a member of the local conference of the Evangelical United Brethren Church.

"3. By force of the provisions of Section 1715.14, Revised Code, and the regulations pertaining to the ownership and disposal of local church property contained in the 'Discipline of the Evangelical United Brethren Church.' The Conference of such denomination is vested with the right to file a petition for the sale of the property of a local church holding membership in such denomination and which has ceased to exist."

"The method of selection of a minister for a particular church may be controlled by the rules and regulations of the denomination." 76 Corpus Juris Secundum, Religious Societies, Section 42, page 798.

"The choice of appointment, installation, powers, tenure and removal of a clergyman are, of course, governed by the particular law of a denomination except in so far as provisions are made regarding such matters in the Charter of Incorporation." 47 Ohio Jurisprudence 2d, Section 31, pages 308 and 309.

The evidence (Paragraph 121, page 52, 1967 Discipline) is to the effect that in the EUB Church the pastor is appointed by the Bishop and Superintendents.

Where a local religious society or congregation, wheth-

er it be an association or a corporation, is a subordinate member of a general church organization with superior ecclesiastical tribunals and with ultimate power in some supreme judicatory its property has been held to be owned not by the local church or the individuals thereof but to be held in trust for the general church body or denomination for whose use it was dedicated, although there is no express dedication or declaration of trust. (70 Corpus Juris Secundum, pages 820 and 821; *Kelly* v. *McIntire,* 123 N. J. Eq. 351; *Wilson* v. *Fromm,* 26 N. P. (N. S.), 75. See also 1967 Church Discipline as to Trust Clause, Paragraph 805, page 165, wherein are found provisions respecting the nature of the Trust Clause which shall be inserted in the proper places in the Deeds of Conveyance.

In paragraph 809 thereof it is provided that title to all property of a local church is to be held subject to the provisions as therein stated, whether title to same is to be taken in the name of the local trustees or in the name of a corporation organized for that purpose or otherwise.

In respect to the claim of the defendants that an injunction may not be granted nor an implied trust be imposed upon the real and personal property here in question, it is our opinion that most courts have taken the position that church property is impressed with a trust for the maintenance of the form of ecclesiastical government of which the church is a part, even though there is an absence of specific trust provisions in the instrument of conveyance. Furthermore, here all the Mills Memorial Church property was acquired after it was incorporated and, as hereinbefore pointed out, the Articles of Incorporation made this church subject to being conducted according to the Discipline and rules of the E. B. Church which later, by merger, became the EUB Church. In addition, the evidence shows that the Mills Memorial Church did submit itself to the Discipline of the EUB Church until the defendants joined a different denomination.

Would the granting of the prayer of the plaintiffs' amended petition and the engrafting of an implied trust upon the real and personal property here involved consti-

tute, as claimed by the defendants, the taking of their property and constitute also an interference with the rights of conscience of the membership, all in violation of the constitutions of the United States and the state of Ohio?

The defendants assert that no denomination can exercise control over a local congregation so as to require the property of the latter to be used for the propagation of doctrines in conflict with the fundamental teachings of the denomination accepted at the time the local congregation united with the denomination. 76 Corpus Juris Secundum, at page 849. And in support of their claim that there has been a substantial or fundamental departure on the part of the EUB Church from its doctrines and teachings and breach of the compact between the local church and denomination, they cite some authorities in which they also claim is set forth the modern test of substantial or fundamental departure. Upon examination of the authorities, we find that these cases so cited deal strictly with congregational churches which are independent and autonomous entities and therefore are inapplicable to a connectional type of church.

While there may be situations develop where, in an ecclesiastical dispute involving a denominational church, the decision of the highest church judicatory will not be accepted as final and conclusive by the civil courts, we are not here confronted with a dispute which calls for the application of such a rule. This, for the reason that the evidence falls far short of showing that the EUB Church's merger with the Methodist Church, resulting in the creation of the United Methodist Church, resulted in a perversion of the trust to which the Mills Memorial Church properties were dedicated, nor does the evidence in any manner tend to show that the EUB Church has departed, in a broad, fundamental and a substantial manner from the customary organization, operation and doctrine of the church. A most interesting case presenting such a departure is *St. Nicholas Cathedral* v. *Kreshik,* decided by the Court of Appeals of New York December 30, 1959 and found in 7 N. Y. 2d 191, 164 N. E. 2d 687.

The defendants claim that the United Methodist Church has departed from the tenets of faith, practice and discipline of the EUB Church, which church, it is claimed by them, is now defunct. Such specific departures are set forth as: In the selection and appointment of bishops and superintendents; the permissive use of alcohol and tobacco by the clergy; the condonation of civil disobedience by the United Methodist Discipline and that church's affiliation with the world church.

It is our opinion that such actions, even if shown to have occurred, do not result in or produce a perversion of the trust to which the local church properties were dedicated, nor does the same constitute a departure in a broad, fundamental and substantial manner from the customary organization, operation and doctrine of the EUB Church. Those respects in which the defendants claim the EUB Church departed from its tenets of faith and church doctrine in merging with the Methodist Church might more properly be described as the Church directing its efforts toward meeting changes in our changing society. More and more religious denominations are becoming increasingly aware of the social problems of our day and need for the church becoming involved in these problems so as to bring to their solutions the spiritual guidance and faith which only religious bodies can furnish.

Counsel for plaintiffs have, in our opinion, aptly described the situation in which the defendants find themselves, in these words:

"It is true that to some, the increased involvement of the church in the social problems of the day is distasteful. But where one has voluntarily become a member of a denominational church, world wide in scope, with members in fifty-two countries, one must be willing to accept and abide by the constitutionally enacted laws, both social and doctrinal of the church denomination. If in good conscience an individual, or group of individuals, cannot accept such policies, then they have the choice of working within the established procedure of the church to effect a desired change, or withdrawing and seeking membership in a church more attuned to their personal beliefs."

"Defendants herein have made their choice. They have withdrawn from the Evangelical United Brethren Church, now the United Methodist Church. This, they have complete liberty to do, but they have no right whatsoever to take the church property with them."

We find, in case No. 35689, that plaintiffs are entitled to the relief prayed for in their amended petition, and in case No. 35765 the plaintiffs are not entitled to the relief they seek. An entry may, therefore, be prepared rendering judgments in these causes in accordance with this opinion.

We have noted that in the trial brief of counsel for plaintiffs they have inserted what they claim to be proper as findings of fact and conclusions of law. We believe that therein are substantially set forth that which we find as the facts and the law applicable thereto. In the event that an application for separate findings of fact and conclusions of law are sought, counsel may follow the same in the preparation thereof. However, we suggest that there be deleted from the findings of fact the lettered subdivisions under the numbered findings of fact, and from the conclusions of law the citations of authorities given in support thereof.

*Judgments accordingly.*