30301. CARNES et al. v. SMITH et al.

HALL, Justice.

This appeal involves a dispute over church property between the local members of the Noah's Ark Methodist, now Independent, Church and the general church, The United Methodist Church. The facts are undisputed. Noah's Ark Methodist Church was established in 1852, when the property on which the church now stands was deeded to the named individuals as "trustees of the Methodist Episcopal Church at Mount Pleasant Academy . . . their Successors in office as such forever in fee simple." From that time until 1969, the local church had continued as a connectional church of The United Methodist Church or its predecessor, the Methodist Episcopal Church. During this period, Noah's Ark had contributed funds to

the parent church, had sent delegates to participate in conferences, had accepted pastors assigned to it by the general church, had held itself out as a participating member of the Methodist Church, and had been organized and functioned according to the laws and rules of The United Methodist Church and the church discipline.

The local church's dissatisfaction with the general church stemmed from the refusal of the local bishop and district superintendent to respond to the church's 1961 resolution requesting a full time pastor. The members wished to make Noah's Ark a single rather than two-church charge that shared a pastor with a neighboring congregation. The bishop's refusal was based on the concern that such a small church, consisting of less than one hundred members, would not be able to support a full time pastor financially. The matter continued unresolved until 1969 when the local trustees voted to withdraw from the general church, and submitted a petition to that effect, signed by forty-one church members, to the Superintendent of the Griffin District. The representatives of The United Methodist Church, though they respected the right of the members to withdraw from the general church, maintained that the local church property remained part .of the parent organization to which it was entrusted, and that the new Noah's Ark Methodist Church (Independent) had no right to its use or the use of the local name. However, the church members continued to use the property, and steadfastly refused to allow the superintendent to address them and to accept the new pastor assigned to their charge.

After the sheriff was called to remove the superintendent from the church one Sunday, he promised to allow the courts to resolve the property dispute. Thereafter an equitable petition was filed on behalf of The United Methodist Church by the Griffin district superintendent, the bishop, and others against the trustees of Noah's Ark from appropriating the property and name of the local church. Both parties moved for summary judgment; the trial court granted the motion of the plaintiff United Methodist Church and enjoined the Noah's Ark trustees from any further use of the local property and the local name.

32

1. The defendant trustees of the Noah's Ark Church have appealed. They claim the court erred in granting the plaintiff's motion for summary judgment and denying their own based on this court's decision in *Presbyterian Church in the U. S. v. Eastern Heights Presbyterian Church*, 225 Ga. 259 (167 SE2d 658) (1969), cert. den., 396 U. S. 1041 (1970), where we held there was no longer an implied trust theory in Georgia. The trustees contend that without an implied trust, the property must be awarded to the legal title holders, in this case as in *Presbyterian Church*, the trustees of the local church.

The United Methodist Church, however, relies on the fact that Noah's Ark has been a connectional church from its inception in 1852 and is thus subject to the Book of Discipline, the constitution of The United Methodist Church. The discipline makes clear that church property is held by local trustees for the benefit of the general church. *Presbyterian Church*, it argues, merely holds that there is no implied trust arising solely from a connectional church relationship, and that the property should go to the local trustees only where "there [is] no other basis for a trust in favor of the general church. . ." 225 Ga. 259, 260.

It is clear and uncontroverted from the testimony and the law of the church as contained in the Book of Discipline, which is included in the record as an exhibit, that The United Methodist Church is connectional or hierarchical[1] in structure. Discipline, Ch. 4, p. 151; United Methodist Church v. St. Louis &c. Methodist Church, 150 Ind. App. 574 (276 NE2d 916, 52 ALR3d 311)

---

[1] There are three basic types of church organizations recognized in Watson v. Jones, 80 U. S. (13 Wall.) 679, 722 (1971). "The third is where the religious congregation or ecclesiastical body holding the property is but a subordinate member of some general church organization in which there are superior ecclesiastical tribunals with a general and ultimate power of control more or less complete, in some supreme judicatory over the whole membership of that general organization." See Kedroff v. St. Nicholas Cathedral of the Russian Orthodox Church, 344 U. S. 94 (1952).

(1971); Trustees of Peninsula Annual Conference v. Spencer, 40 Del. Ch. 418 (183 A2d 588) (1962); Clay v. Crawford, 298 Ky. 654 (183 SW2d 797) (1944). This means that the local church is a part of the whole body of the general church and is subject to the higher authority of the organization and its laws and regulations.

In Watson v. Jones, 80 U. S. (13 Wall.) 679 (1871), the United States Supreme Court considered a dispute between two factions of a local church as to which group had the right to use the church property. The court ruled, although courts could not inquire into ecclesiastical questions[2] but must accept as final the rulings of the highest church judicatory on those matters,[3] that the courts were the proper fora for determining property disputes.[4] The court held that the disputed church property therefore belonged to the local church members who adhered to the "acknowledged organism by which the body is governed... The minority in choosing to separate themselves into a distinct body, and refusing to recognize the authority of the governing body, can claim no rights in the property from the fact that they had once been members of the church or congregation."[5] Watson v.

---

[2]"A matter which concerns theological controversy, church discipline, ecclesiastical government, or the conformity of members of the church to the standards of morals required of them." Watson v. Jones, supra, p. 733.

[3]Absent a showing of fraud, collusion or arbitrariness. Gonzalez v. Roman Catholic Archbishop, 280 U. S. 1 (1929).

[4]"Religious organizations come before us in the same attitude as other voluntary associations for benevolent or charitable purposes and their rights of property, or of contract, are equally under the protection of the law, and the actions of their members subject to its restraints." Watson v. Jones, supra, p. 714.

[5]The controversy before the Court over control of the church property was typical of many that arose in Kentucky and Missouri Presbyterian churches after the General Assembly of the Presbyterian Church declared itself to be anti-slavery—pleading allegiance to President

Jones, supra, p. 725. By this principle of resolving property disputes as laid down in Watson, the law implies a trust upon the local church property for the benefit of the general church where there is a connectional relationship.[6]

The Georgia courts until 1969, however, had taken "the [English] view that such a trust is conditioned upon the general church's adherence to its tenets of faith and practice as existed when the local church affiliated with it, and that an abandonment of, or departure from, such tenets is a diversion from the trust, which the civil courts will prevent." *Presbyterian Church in the U. S. v. Eastern Heights Presbyterian Church,* 224 Ga. 61, 68 (159 SE2d 690) (1968), rev'd. 393 U. S. 440 (1969). This court then went on to affirm in *Presbyterian Church* the trial court's judgment granting the church property to the local dissidents based on the jury's finding that the general church had "substantially abandoned" its original tenets.

The United States Supreme Court reversed stating that Georgia's departure-from-doctrine qualifications to

---

Lincoln and the federal government and espousing the emancipation of slaves.

[6]Justice Brennan, who wrote the court's decision in Presbyterian Church v. Mary Elizabeth Blue Hull Memorial Church, supra, further clarified the standards to be used in his concurring opinion in Maryland & Virginia Eldership of the Churches of God v. Church of God at Sharpsburg, 396 U. S. 367, 368 (1970) (joined by Douglas and Marshall, JJ.). Stressing that the states could adopt any means of settling property disputes that did not involve doctrinal matters, he cautioned that the Watson approach was viable, only if the relevant church governing body was easily discernible "without the resolution of doctrinal questions and without extensive inquiry into religious polity." In addition, other "neutral principles of law," such as "provisions in deeds or in a denomination's constitution for the reversion of local church property to the general church," could be used, again only as long as no determination of religious questions was involved. 396 U. S. 367, 370.

the implied trust rule[7] violated the First Amendment by demanding an inquiry into church doctrine and practice, and that the civil courts must resolve church property ownership by employing only *"neutral principles of law,* developed for use in all property disputes, which can be applied without 'establishing' churches to which property is awarded." Presbyterian Church v. Mary Elizabeth Blue Hull Memorial Presbyterian Church, 393 U. S. 440, 449 (1969). (Emphasis supplied.)

On remand, this court held that if the de-parture-from-doctrine element could "play no role in any future judicial proceedings,"[8] the "entire theory must fall."[9] *Presbyterian Church v. Eastern Heights Presbyterian Church,* 225 Ga. 259, 260 (167 SE2d 658) (1969), cert. den., 396 U. S. 1041 (1970). The property was awarded to the local churches based on the legal title reflected in their respective deeds.[10] "There was no other basis for a trust in favor of the general church, none being created by the deeds on the property, implied under the statutes of this state (Code §§ 108-106, 108-107), *or required by the constitution of the general church."* 225 Ga. 259, 260. (Emphasis supplied.) This court therefore left open the possibility of an implied trust in favor of a general church where factors other than mere connectional relationship between a local and general church were present.

---

[7]The Supreme Court reaffirmed the implied trust doctrine of Watson v. Jones, however. 393 U. S. 440, 445.

[8]225 Ga. 259, 260, quoting 393 U. S. 440, 450.

[9]"Since Georgia chose to adopt the implied trust theory *with* this element as a condition, this court must assume that it would not have adopted the theory without this mode of protecting the local churches." 225 Ga. 259, 260.

[10]The Eastern Heights Presbyterian Church acquired its property by deed from the Independent Presbyterian Church in 1930, naming as grantee "Eastern Heights Presbyterian Church, a religious corporation." Eastern Heights also held two other tracts: one, designated named individuals as "Trustees of Eastern Heights Presbyterian Church, and their

Reliance on such other factors was generally sanctioned by the United States Supreme Court in Maryland & Virginia Eldership of the Churches of God v. Church of God at Sharpsburg, 396 U. S. 367, supra (1970). Since the Maryland Court of Appeals[11] had resolved the property dispute without "inquiry into religious doctrine," there was no violation of the First Amendment; hence, there was no federal question and the appeal was dismissed.

The Maryland opinion, so approved, is thus instructive as to what "neutral principles of law," may appropriately be considered. It is especially so because Maryland, like Georgia since the *Presbyterian Church* case, has no implied trust doctrine. Maryland & Virginia Eldership of the Church of God v. Church of God at Sharpsburg, supra, remanded 393 U. S. 528, affd., 254 Md. 162 (1969), affd. per curiam, 396 U. S. 367 (1970).

The Sharpsburg case involved competing claims to church property by the general Eldership and two local dissident churches that had been members of the Eldership. The court, in deciding the dispute, looked to the language of the deeds, applicable state statutes regarding religious corporations, the provisions in the Eldership constitution, and the corporate charters of the

---

successors in office"; the other, "for the use and benefit of the congregation of the Eastern Heights Presbyterian Church."

The property owned by the Hull Memorial Church named the church itself as grantee, and required that the property "be used as a place of worship by a church of the Presbyterian denomination known as the named church." 225 Ga. 261.

[11] The Maryland Court of Appeals had decided this case prior to Presbyterian Church v. Hull Memorial Church, supra, on the same grounds, but the Supreme Court remanded the case for further consideration after Presbyterian Church. The Maryland court reaffirmed its decision which the Supreme Court then approved. 396 U. S. 367, n. 2.

two local churches. The statutes[12] and Eldership constitutions[13] did not address the issue of church ownership, but the local charters placed ownership and control in the local congregations.[14] Therefore, the court held that the local churches owned the property

It is thus apparent that as long as no inquiry is made into religious doctrine, statutes,[15] corporate charters, the language in relevant deeds and the organizational constitutions of the denomination qualify as "neutral principles of law" as required by Presbyterian Church, supra. We will consider according to the case law developed above, the language of the deeds; relevant statutes, Code Ann. §§ 108-106, 108-107 and Code Ann. §§ 22-5507, 22-5508; and the general church constitution, the Book of Discipline of The United Methodist Church.[16]

As already mentioned, the 1852 deed conveyed the property to named individuals as "Trustees of the Methodist Episcopal Church at Mount Pleasant Academy" and their successors. Therefore, the deeds are materially indistinguishable from those in *Presbyterian Church*.[17]

---

[12]The statutes generally allowed trustees to own and operate the church property, unless statutes with more specific provisions have been specially enacted for the benefit of a particular denomination. 249 Md. 650, 656.

[13]The Eldership constitution only provided for the reversion of local property to the Eldership if the church should "become extinct or cease to be." 249 Md. 650, 665.

[14]The court decided that the Church of God was part congregational and part connectional in structure. 249 Md. 650, 665.

[15]The general church may also have special laws passed in the state. Maryland & Virginia Eldership of the Church of God v. Church of God at Sharpsburg, 241 A2d 691 (Md. 1968), remanded 393 U. S. 528, affd., 254 A2d 162 (1969), affd., per curiam, 396 U. S. 367 (1970).

[16]The Noah's Ark Church is unincorporated so there is no corporate charter to consider.

[17]See note 10. supra.

No trust in favor of the general church may be implied under the general trust statutes (Code Ann. §§ 108-106, 108-107), where no funds are donated to purchase and develop the local church property by the general church. *Presbyterian Church,* 225 Ga. 259, 260. However, Code Ann. § 22-5507 recognizes and validates deeds conveying land for church purposes according to the limitations set out in the deed and for use "according to the mode of church government or rules of discipline. . ." Where the conveyance is made to trustees, Code Ann. § 22-5508 provides that such trustees hold the church property "subject to the authority of the church or religious society for which they hold the same in trust. . ."

The statutes thus mandate that the church property be held according to the terms of the church government. Since it is uncontroverted that the church was a connectional member of The United Methodist Church from its founding in 1852 until the trustees vote of withdrawal in 1969, there is no question that the trustees held the local church subject to The United Methodist Church and its "mode of church government or rules of discipline." Code Ann. §§ 22-5507, 22-5508.

The Book of Discipline provides for local church property in Section VII. Paragraph 1537 requires that "title to all real property now owned or hereafter acquired by an unincorporated local church, . . . shall be held by and/or conveyed to its duly elected trustees . . . and their successors in office, . . . in trust, nevertheless, for the use and benefit of such local church and The United Methodist Church. Every instrument of conveyance of real estate shall contain the appropriate trust clause as set forth in the Discipline (Par. 1503)." Book of Discipline, Ch. 6, § VII, Par. 1537, pp. 477, 478.

Paragraph 1503 sets out several clauses to be used in deeding church property which establish an express trust in favor of The United Methodist Church. The deeds to the Noah's Ark property did not originally contain such clauses. nor were any ever added. However, subparagraph 5 of paragraph 1503 provides that "the absence of a trust clause . . . in deeds and conveyances previously executed shall in no way exclude a local church or church agency from or relieve it of its connectional

responsibility and accountability to The United Methodist Church; *provided* that the intent and desires of the founders . . . are shown by any or all of the following indications: (a) the conveyance of the property to the trustees of a local church or agency of any predecessor to The United Methodist Church; (b) the use of the name, customs, and polity of any predecessor to The United Methodist Church in such a way as to be thus known to the community as a part of such denomination; (c) the acceptance of the pastorate of ministers appointed by a bishop or employed by the superintendent of the District or Annual Conferences of any predecessor to The United Methodist Church." Book of Discipline, Ch. 6, § I, Par. 1503 (5), p. 461. Not only one, but all three of these indications are present in this case, as is abundantly clear from the record.

We therefore hold that an implied trust was intended by the founders of the Noah's Ark Methodist Church in favor of The United Methodist Church based on the "neutral principles of law" as set out above. In doing so, we agree with the reasoning of the Indiana Court in its recent decision of United Methodist Church v. St. Louis &c. Methodist Church, 150 Ind. App. 574, supra, where it considered a similar church property dispute. That court said (p. 589): "A local church, if it desires to remain independent of the influence of a parent church body, must maintain this independence in the important aspects of its operation—e.g., polity, name, finances. It cannot, as here, enter a binding relationship with a parent church which has provisions of implied trust in its constitution, by-laws, rules, and other documents pertaining to the control of property, yet deny the existence of such relationship. It does not matter whether such agreement to be bound is memorialized. A local church cannot prosper by the benefits afforded by the parent, participate in the functioning of that body, yet successfully disclaim affiliation when the parent acts to the apparent disadvantage of the local, so to shield from equitable or contractual obligation the valuable property acquired by the local church either before or during such affiliation." Accord, Ohio Southeast Conference of E. V. B. Church v. Kruger, 17 Ohio Misc. 8 (243 NE2d 781) (1968).

Thus convinced, we decline to be persuaded by Merryman v. Price, 147 Ind. App. 295 (259 NE2d 883) cert. den., 404 U. S. 852 (1970), urged by the Noah's Ark church. In that case the Indiana court refused to look to the church discipline to settle a property dispute because it considered the discipline ecclesiastical in nature. Indeed, the Indiana court itself has not followed Merryman, but has distinguished it in the St. Louis Crossing case, supra, where it looked to non-ecclesiastical, property portions of the church discipline. The existence and presence in the record of the Book of Discipline, with its provisions on church property also distinguish this case from *Presbyterian Church,* 225 Ga. 259 (1969), cert. den., 396 U. S. 1041 (1970). We therefore hold that the trial court did not err in granting summary judgment to The United Methodist Church on the issue of ownership of the church property.

2. Noah's Ark Methodist Church (Independent) asserts that the trial court erred in ruling that use of the local church name for its non-connectional organization unlawfully deprived The United Methodist Church and its connectional local church of their identity and in enjoining that use. We affirm the decision of the trial court in enjoining the use of the name Noah's Ark Methodist Church (Independent) by the dissident church members on a motion for summary judgment.

It is well established that a court of equity will enjoin unfair use of the name of another.[18] *Lane v. Brothers & Sisters of the Evening Star Society,* 120 Ga. 355 (47 SE 951) (1904); Purcell v. Summers, 145 F2d 979 (4th Cir. 1944). See Nims, Unfair Competition and Trademarks § 1. This protection also applies to unincorporated organizations and associations. " 'An association has a

---

[18]We expressly decline to rule whether the Uniform Deceptive Trade Practices Act, Code Ann. Ch. 106-7 applies here. Also, Code Ann. § 106-201 does not apply to unincorporated associations. *Faisan v. Adair,* 144 Ga. 797 (87 SE 1081); *Methodist Episcopal Church, South v. Decell,* 60 Ga. App. 843 (5 SE2d 66) (1939).

right to adopt a title by which it is to be known, the unauthorized use of which will be restrained by a court of equity.' 4 Cyc. 304, and authorities there cited." *Lane v. Brothers & Sisters of the Evening Star Society,* supra, p. 355 (1). Accord, *Faisan v. Adair,* 144 Ga. 797 (87 SE 1080) (1915).

In *Faisan v. Adair,* supra, p. 799, the court affirmed an injunction granted to the Ancient Arabic Order of the Nobles of the Mystic Shrine against the defendant Ancient Egyptian Arabic Order of the Nobles of the Mystic Shrine of North and South America, both voluntary associations. The standard is set out in that case: "The judge who heard the application for injunction found that the name adopted by the defendants was so similar to that of the plaintiffs that the natural tendency was and would be to confuse and mislead the public, and in consequence was a fraud and injury which the plaintiffs were entitled to enjoin. . ." P. 799.

The local name of a church is "of great value, not only because business [is] carried on and property held in that name, but also because members associated with the name the most sacred of their personal relationships and the holiest of their family traditions." Purcell v. Summers, supra, p. 982. And, since "the right to use the name inheres in the institution, not in its members; . . . when they cease to be members of the institution, use by them of the name is misleading and, if injurious[19] to the institution, should be enjoined." Purcell v. Summers, supra, p. 987. Thus, the local members in defecting from the established church have given up their right to use the local church name. See Grand Lodge, Improved, Benevolent and Protective Order of Elks v. Grand Lodge, Improved, Benevolent and Protective Order of Elks, 50 F2d 860 (4th Cir. 1931); First Independent Missionary Baptist Church of Chosen v. McMillan, 153 S2d 337 (Fla. 1963).

---

[19]Actual injury need not be shown but only likely injury as a result of the confusion of the public. Nims, supra, § 313.

Noah's Ark Methodist Church (Independent), however, argues that the addition of (Independent) to the original name sufficiently distinguishes the new church from both the local Noah's Ark Methodist Church and the connectional organization, The United Methodist Church, while retaining the local identity of the original church. It is this very factor, however, that creates the unfair confusion,[20] especially where the new church will be located in the same area as the old. Local residents who desire to become new members, wish to re-establish ties with the original church, or want to donate or leave a bequest to the original church affiliated with the connectional church might easily be misled to the detriment of both of these organizations.

The United Methodist Church presented evidence by affidavit that Noah's Ark Methodist Church has existed since 1852, that the name has always been attractively displayed on the church property and that the church is well known throughout the area as a connectional branch of The United Methodist Church. We find that this uncontroverted evidence is sufficient to sustain the injunction by summary judgment of the use of the words Noah's Ark Methodist Church (Independent). We therefore affirm the judgment of the court below on this issue. However, we express no opinion as to what name would sufficiently distinguish the new and the old local churches.

The trial court did not err in granting summary judgment to the plaintiffs. Since Noah's Ark obtained no certificate for immediate review on the denial of its motion for summary judgment, we do not consider it here. It is obvious, however, from our ruling here that its denial would have to be affirmed. The judgment of the court below is thus affirmed.

*Judgment affirmed. All the Justices concur, except Nichols, C. J., Undercofler, P. J., and Jordan, J., who dissent.*

---

[20] "The imitation need only be slight if it attaches to what is most salient." *Emory v. Odd Fellows,* 140 Ga. 423, 427 (78 SE 922) (1913).

SUBMITTED SEPTEMBER 8, 1975 — DECIDED JANUARY 6, 1976 — REHEARING DENIED JANUARY 27, 1976.

*Paul S. Weiner,* for appellants.
*Kilpatrick, Cody, Rogers, McClatchey & Regenstein, Ernest P. Rogers, Thomas K. McWhorter,* for appellees.

UNDERCOFLER, Presiding Justice, dissenting.

I respectfully dissent from the majority opinion. It is my opinion that *Presbyterian Church in the U. S. v. Eastern Heights Presbyterian Church,* 225 Ga. 259 (167 SE2d 658) (1969) abolished the principle which implied a trust upon local church property for the benefit of the general church where there exists a connective form of government. Georgia has adopted what is known as the "formal title" doctrine. Essentially this limits a title inquiry to the relevant deeds and related documents. Property Rights—Church Property, 52 ALR3d 324, 346. The deed here was delivered in 1852 to trustees for the "Methodist Episcopal Church at Mount Pleasant Academy." There is nothing in this deed or this record to indicate that any trust was established for any beneficiary other than the local church when this deed was delivered or thereafter.

I am authorized to state that Chief Justice Nichols and Justice Jordan concur in this dissent.